BODIE v. CHAR. & WEST. CAR. RY. CO.

1. A New Trial may be granted for inadequacy of damages.
   Mr. Chief Justice Pope *dissenting.*
2. Evidence—Appliances—Methods.—In an action against a railroad company for injury from negligence in failure to furnish a requisite force of hands to do special work, after promise, it is competent to show the usual methods on this and other roads of doing the same work.
3. Jury—Circuit Judge.—It is not error for a trial Judge to refuse to require the jury to visit the place of an accident, after deciding that they could do so, upon their informing him that a view of the place would be of no benefit to them.
4. Appliances—Contributory Negligence—Proximate Result—Methods—Section Foreman.—Charge as to duty of master to furnish proper appliances; ordinary care and contributory negligence in use of them by the servant; natural and proximate result; and

methods adopted by the servant in doing the work, in case of section foreman injured by falling of one of his hands caused by inadequate force; approved.

5. ASSUMPTION OF RISKS—SECTION FOREMAN.—Performance of work by section foreman with insufficient hands, is not a defense to an action by him against master for injury occasioned thereby.

6. NEW TRIAL.—There being evidence to sustain a verdict, refusal of trial Judge to set it aside will not be disturbed.

7. REHEARING refused.


Before McCULLOUGH, special Judge, Greenwood, May, 1902.   Affirmed.

Action by Josiah W. Bodie against Charleston and Western Carolina Railway.

From judgment for plaintiff, defendant appeals on the following exceptions:

"1. The defendant excepts to and appeals from the order or judgment of Judge Gary setting aside the verdict rendered on the trial before him and granting a new trial, on the ground that the Circuit Judge did not have the power to grant such new trial for inadequacy of the amount of the verdict rendered, and it was error of law for him to do so.

"2. The defendant excepts to the rulings of Honorable Joseph A. McCullough, presiding Judge, in relation to the introduction of testimony, and alleges error in such rulings as follows: (a) In allowing the plaintiff, Bodie, to testify, against the objection of the defendant, as to what was the usual and customary way of handling and loading rails, and that the manner in which he was handling rails when he was injured was the usual and customary manner, the testimony being as follows: 'Q. What is the usual and ordinary way? Mr. Grier: We object to that also as incompetent.   Objection overruled.  A. Just like I was handling them.'  The error being that the Circuit Judge by his ruling allowed testimony as to the usual and customary method of handling rails, upon the question of plaintiff's ordinary care in handling such rails when he was injured.   (b) In allowing the wit-

ness, Bodie, to testify that the method he adopted for hand-
ling these rails was usual and customary on the C. & W. C.
Railroad, as follows: 'Q. What has been the method adopted
on the C. & W. C. Railway? Mr. Grier: We object to that
as incompetent. Objection overruled. Q. What has been
the custom adopted there? A. The customary way of load-
ing rails was to load it the way I spoke of just a few minutes
ago—both ends at a time. We usually in loading loaded in
no other way.' The error being in allowing testimony as to
the custom of other agents and employees of this defendant
in handling rails, upon the question of ordinary care of the
plaintiff in handling rails when he was injured. (c) In
allowing the witness, W. D. Melton, to testify what was the
customary way of loading rails on a push car of the Central
of Georgia Railroad and other roads—the testimony being
as follows: 'Q. What road did you work on? A. I worked
for the Central of Georgia. Q. Did you work for the C.
& W. C.? A. Well, that was part of that road at that time.
Q. What is the usual and customary way of loading rails on
a push car? We object to that on the ground of incompe-
tency. Objection overruled. Q. What is the usual and
customary way of loading rails on a push car? A. Pick it
up and carry it and load it on the car. Q. One end at a
time, or altogether? A. I never have picked up one end at
a time. I just picked up the whole rail and carried it and
load it on the car. Q. What is the usual and customary
way? Was it ever done any other way? A. Always saw
it that way.' The eror being in allowing testimony as to
the custom on other railroads or on this road in handling
rails, upon the question of ordinary care of the plaintiff in
handling rails when he was injured. (d) In allowing the
witness, P. W. Ellenberg, to testify as to the usual and cus-
tomary manner of handling rails, in answer to the following
questions, to wit: 'Q. What is the usual and customary man-
ner of handling rail? Do you know how it is done? What
is the customary way?' The error being in allowing testi-
mony as to the custom on other roads or on this road in

handling rails upon the question of ordinary care of the plaintiff in handling rails when he was injured. (e) In allowing the witness, J. B. Ogilvie, on cross-examination, to testify that a larger force of hands would have been safer in this case, because such force would be able to catch and hold up a falling rail, if one hand should slip. The error being that there was no such negligence alleged in the complaint, and such testimony was, therefore, incompetent.

"3. The presiding Judge, Honorable Joseph A. McCullough, erred in not requiring the jury to visit the place of the injury, after having ruled in defendant's favor and against the objection of plaintiff, that they should do so, and in allowing the jury to determine this question for themselves. The error being: (a) Having decided that it was necessary to a just decision of the cause for the jury to visit such place, it was error of law for the Circuit Judge to subsequently allow the jury to determine the question whether they would so view the place or not for themselves. (b) Because the record shows that it was necessary to a just decision of this cause for the jury to view the place of injury, and the Circuit Judge having so held, it was error of law for him to allow the jury to have any voice in determining this question.

"4. The presiding Judge, Honorable J. A. McCullough, erred in charging the jury as follows: 'If you conclude that defendant did not require the plaintiff to do this extra work, but the plaintiff did so freely, voluntarily, of his own motion, without being required by the defendant so to do, why then, of course, under the complaint, the plaintiff would not be entitled to recover, because he bases his action upon that theory. If, however, you conclude that the defendant did require the plaintiff to do this extra work, then there immediately followed a duty and obligation which the law imposes upon the defendant railway company, and that is, that the defendant railway company would furnish to the plaintiff suitable, safe and appropriate appliances for the purpose of doing that work'—the error being that his Honor assumed as a fact in the case that the work in which the plaintiff was

20—66

engaged when injured was extra work, when it was one of the issuable facts in the case whether such work was extra or was a part of and a mere incident to the general work of keeping up road-bed, which had been committed to the plaintiff—thus charging upon the facts, in violation of the provision of the Constitution which prohibits such a charge.

"5. The presiding Judge, Honorable J. A. McCullough, erred in charging the jury as follows: 'That it was the duty of the defendant to adopt and use such machinery, apparatus, appliances, tools and means as were suitable and proper for the prosecution of the business which it required the plaintiff to do, with a reasonable degree of safety to life and security against injury, and it was the duty of the defendant and not the plaintiff to exercise due care and diligence to ascertain whether the appliances furnished were safe and suitable'—the error being: (a) That while in some cases the employee may assume that machinery given him to work with is safe and suitable, and he is not bound to inquire whether it is so or not, such principle does not apply to this case, where the alleged negligence was in failing to furnish a sufficient force of hands, and the inefficiency, if it existed, was patent, and particularly where the plaintiff himself was in control of the instrumentalities given him for his work, and in some measure stood in the position of master with reference thereto.  (b) In all cases it 'is the duty of an employee to exercise due care in and about the work committed to him, and it was error of law for the Judge to instruct the jury that it was not the duty of the plaintiff to exercise due care and diligence to ascertain whether the appliances furnished were safe and suitable.   (c) The doctrine stated was not applicable to this case, and was error of law, for the further reason that the uncontradicted testimony of the plaintiff showed that he had full knowledge, some time before his injury, of the alleged insufficiency of the force committed to him.

"6. The presiding Judge, Honorable J. A. McCullough, erred in charging the jury, on the request of plaintiff, as fol-

lows: 'That if the jury find that the plaintiff was injured by an accident resulting from the concurrent negligence of a fellow-servant, and of the defendant, the defendant is liable as though it were the sole offender.' The error being: (a) The charge leaves entirely out of account the question of proximate cause, and instructs the jury in effect that plaintiff can recover for an accident resulting from any previous negligent act of the defendant, remote or proximate, if it concurred with a negligent act of a fellow-servant. (b) The instruction was more erroneous and hurtful to the defendant because the presiding Judge elsewhere in his charge instructed the jury that an accident and a negligent act are entirely different, and to be distinguished one from the other. (c) The effect of the charge was to instruct the jury that the defendant would be liable for an accident. (d) It decides all questions against the defendant, and practically instructs the jury to render a verdict in favor of plaintiff, inasmuch as one of the defenses of the railway company was that the cause of the injury was the accidental falling of a fellow-servant.

"7. The presiding Judge, Honorable J. A. McCullough, erred in refusing to charge the defendant's third request as presented, as follows: 'The jury cannot find for the plaintiff, unless the preponderance of the evidence shows that the defendants were guilty of negligence as charged in the complaint, and that such negligence was the proximate cause of the injury, and in order to warrant a finding that the negligence complained of was the proximate cause of the injury alleged, it must appear that the injury was a natural and probable consequence of the alleged negligence, and that it could have been and ought to have been foreseen,' and in modifying the same by striking out the words: 'and that it could have been and ought to have been foreseen.' The error being: (a) The charge as modified makes the defendant liable, whether the alleged injury as the result of the alleged negligence could have and ought to have been foreseen or not. (b) The request as presented contained a

sound proposition of law, and ought to have been charged without modification.

."8. The presiding Judge, Honorable J. A. McCullough, erred in refusing the defendant's fourth request, as follows: 'If the jury believe that the cause of the injury was the accidental falling of one of the plaintiff's coworkers, and that this fall was not caused by the negligence of the railway company, then the plaintiff cannot recover.' The error being: (a) The request contained a sound proposition of law, and should have been charged as submitted. (b) The modification emasculates the request. (c) The modification makes the defendant liable for consequences of the fall, although not liable for the fall itself, and allows recovery for negligence not alleged in the complaint.

"9. The presiding Judge, Honorable J. A. McCullough, erred in refusing to charge the jury, as requested by the defendant, as follows: 'If the jury believe that the force of hands furnished to the plaintiff was sufficient and safe for doing the work in hand in a different way from that which he adopted, then the plaintiff cannot recover, if the evidence shows that his injury resulted from his use of the force for the work in a more dangerous way, unless the evidence also shows that he was directed or required by his employer to adopt such more hazardous way,' and in modifying the same by inserting therein the word 'negligent,' the error being: (a) The request contained a sound proposition of law, and it was error not to charge it as presented. (b) The defendant was entitled to the instruction that the use of a more hazardous way for doing work, when the plaintiff knew of a safe way, was in itself negligence that would bar a recovery. (c) In instructing the jury that before plaintiff could be barred for contributory negligence, defendant must show more negligence on the part of plaintiff than the adoption of a method for doing the work known to be dangerous.

"10. The presiding Judge erred in refusing to charge the defendant's seventh request, as follows: 'If the negligence against which the plaintiff complains—if there was any such

negligence on the part of the railway compapny—was long
enough before the injury to admit of plaintiff's guarding
against it by the use of ordinary care, and he failed to do this,
knowing of such negligence of the railway company, there
can be no recovery.' The error being: (a) The request con-
tained a sound proposition of law, and it should have been
charged as presented. (b) In view of the fact that the
negligence complained of occurred long prior to plaintiff's
injury, the request contained a sound proposition of law
applicable to the case as made, with reference to the question
of contributory negligence, and its refusal eliminated that
defense in the most material aspect of the defendant's case.

"11. The presiding Judge, Honorable J. A. McCullough,
erred in refusing to charge the defendant's eighth request, as
follows: 'The Courts will not take better care of a man
than he takes of himself; hence, if an employee knows that
the work in which he is engaged is dangerous, or that the
appliances used by him are dangerous or insufficient, and
fails to exercise ordinary care and observation to protect
himself after such knowledge, he cannot recover; and if the
jury find such conditions to exist here, their verdict should be
for the defendant.' The error being: (a) The request con-
tained a sound proposition of law, and should have been
charged as presented. (b) In view of the fact that the
negligence complained of occurred long prior to the plain-
tiff's injury, the request contained a sound proposition of
law, applicable to the case as made, with reference to the
question of contributory negligence, and its refusal elimi-
nated that defense in the most material aspect of the defend-
ant's case. (c) It is the duty of an employee to exercise
ordinary care, even when the master has given him defective
appliances with which to work, and the refusal of the Circuit
Judge to present this charge to the jury, ignored this prin-
ciple and relieved the plaintiff from the exercise of such
ordinary care, if the master had previously been negligent in
failing to furnish a sufficient force.

"12. The presiding Judge, Honorable J. A. McCullough,

erred in refusing to grant a new trial, because the testimony taken in its strongest light in favor of the plaintiff shows that the proximate cause of the injury was not the negligence of the defendant, but the accidental falling of one of the plaintiff's fellow-servants, and it was error of law to refuse a new trial on this ground."

*Messrs. Sheppards & Grier* and *S. J. Simpson,* for appellant. *Mr. Simpson* cites: *As to setting aside a verdict for inadequacy of damages, at common law:* 14 Ency. P. & P., 764. *Under our Statutes:* 7 Stat., 253; 14 Stat., 39; Code, 1902, 2734; Code of Proc., 1902, 286. *Decided cases:* 1 Bay, 62; 2 Bay, 466; 2 N. & McC., 516; Harp., 56; 3 McC., 547; 2 Bail., 216. *This question may be raised on this appeal:* 17 S. C., 150; 19 S. C., 607; 20 S. C., 542; 36 S. C., 130; 59 S. C., 51; 46 S. C., 149. *Judge should have allowed jury to visit place of accident:* Code, 1902, 2950. *Charge on facts:* 61 S. C., 563; 2 Ency. P. & P., 576; 57 S. C., 461; 58 S. C., 230. *Plaintiff must ascertain if appliances are sufficient:* 3 Wood on R. R., 1716. *It was duty of plaintiff to use ordinary care to protect himself after knowledge of defective force:* Beach on Con. Neg., sec. 370.

*Mr. Grier* cites: *Receiving incompetent evidence is error:* 32 S. C., 538. *No connection between facts at issue and facts proved over objection:* 1 Green. Ev., sec. 52; 23 Law. Ed., 708; 60 S. C., 153; 61 S. C., 488; 45 S. C., 278. *As to combined negligence of master and fellow-servant:* 106 N. Y., 700; 3 Cush., 270; 46 Wis., 510; 61 Wis., 159; 27 W. Va., 305; 7 L. R. A., 500; 32 N. Y. S. R., 817. *Liability arises alone from the proximate cause of an injury:* 54 S. C., 503; 16 Ency., 1 ed., 428, 440; 116 Penn., 344; 27 Am. R., 653; 3 Par. on Con., 7 ed., 180; 52 S. C., 338; 1 Strob., 525. *If plaintiff adopted more dangerous method, without orders, he cannot recover:* Beach on Con. Neg., 442; 61 S. C., 489; 34 S. C., 214; 42 S. C., 472; 18 S. C., 267. *Doctrine of contributory negligence does not apply here; but injury was*

*caused alone by plaintiff's negligence:* 7 Ency., 2 ed., 585;
Beach on Con. Neg., 58; Thom. on Neg., 156; 61 S. C.,
486; 66 Ia., 599; 41 L. R. A., 33; 82 N. Y., 370; 63 Fed.
R., 407; 98 Ga., 655; 49 Fed. R., 393; 112 Ind., 592; 128
U. S., 91; 100 U. S., 213; 32 S. C., 299; 59 Am. R., 739;
36 Kan., 129; 50 Ga., 465.

*Messrs. Graydon & Giles* and *Caldwell & Park,* contra:
*Court can set aside verdict for insufficiency of damages:*
Code, 1902, 2734; Code of Proc., 1902, 286; 59 S. C., 270;
1 Bay, 52; 2 Bay, 466; 4 McC., 156; 46 S. C., 510; 16
Ency., 1 ed., 589. *Evidence objected to competent:* 61 S.
C., 488; 60 S. C., 169; 44 S. C., 443; 60 S. C., 263.
*Whether jury should view place is matter of discretion with
Judge:* Code, 1902, 2950. *As to exceptions to charge:* 38
S. C., 213; 18 S. C., 282, 270; 34 S. C., 215; 40 S. C., 169;
42 S. C., 467; 61 S. C., 479; 21 S. E. R., 344; 42 S. C.,
414; Whar. on Neg., 2 ed., secs. 17, 18, 19, 21; 1 Strob.,
550. *There being evidence to support the verdict, refusal
of new trial will not be reviewed:* 61 S. C.,491; 15 S. C.,
407; 42 S. C., 471; 64 S. C., 112.

The opinion in this case was filed April 20th, 1903, but
remittitur stayed on petition for rehearing until

May 18, 1903. The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY. *Statement of facts.*—The allega-
tions of the complaint, material to the consideration of the
questions raised by the exceptions, are as follows:

"II. That at the time hereinafter mentioned and for a
long time prior thereto, the plaintiff was employed by the
said defendant as section foreman upon section 18 of defend-
ant's said line of railroad, and as such foreman was ordered
and required, in addition to the other duties imposed upon
him, to haul and put in piles upon the side of said railroad,
certain steel rails, which had been taken up from said track
and cast alongside the same.

"III. That during the summer of 1899, the said defendant furnished to the plaintiff a force of six section hands to do the ordinary and usual work required on said section, but prior to giving the special orders to haul and pile the said steel rails, the said defendant had reduced plaintiff's force of hands to three, and had required plaintiff to take the place of a hand and assist in all such work as required the services of more than three men.

"IV. That when the plaintiff was ordered and required by the defendant to haul and pile the said steel rails, he requested the said defendant to send him more help, protesting that the said steel rails were entirely too heavy (each one of them weighing 600 pounds or more) for the three hands and himself to handle, whereupon the said defendant promised two more men to assist in the said work, in the meantime requiring plaintiff to do and perform the same.

"V. That it was the defendant's duty to furnish to the plaintiff proper appliances and the help necessary to do and perform the work assigned to him and required of him, and notwithstanding its said promise, it wilfully and negligently and carelessly disregarded its duty to plaintiff and his request for more help, and failed to furnish to the plaintiff a sufficient force of hands to do the work required of him, and that such negligence of the defendant was the direct cause of the injury to the plaintiff hereinafter set forth and· alleged.

"VI. That on the 15th day of February, 1900, while the plaintiff, in compliance with the orders of the defendant, was trying, with the assistance of his three hands, to carry one of the said steel rails up an embankment for the purpose of loading it on his car and hauling and piling it as aforesaid, one of his said hands was entirely overcome and exhausted by the great weight of the said steel rail, on account of the failure of the defendant to furnish a sufficient force to carry the same, and fell to the ground, thereby causing the whole weight of one end of the steel rail to be thrown on the plaintiff, by which his right leg was knocked out of place, his back

injured, and a great strain put upon his whole body, causing a lesion of his kidneys and other internal organs."

Upon the first trial the jury rendered a verdict in favor of the plaintiff for $2,400, but on appeal the Supreme Court granted a new trial (61 S. C., 468, 39 S. E., 715). When the case was tried the second time, the jury found a verdict in favor of the plaintiff for $1,000, which was set aside by the presiding Judge, on the ground that if the plaintiff was entitled to recover any sum at all, the said amount was inadequate. On the third trial the verdict was in favor of the plaintiff for $3,000. The defendant appealed upon exceptions, which will be reported.

*Opinion.—First exception.* This exception raises the question whether his Honor, the Circuit Judge, had the power to grant a new trial for inadequacy in the amount of the verdict. Section 2734 of the Code of Laws provides that "Circuit Courts shall have power to grant new trials in cases where there has been a trial by jury for reasons for which new trials have usually been granted in the courts of law in this State." Section 286 of the Code of Procedure, in subdivision 4, contains the provision that "the Judge who tries the cause may, in his discretion, entertain a motion, to be made on his minutes, to set aside a verdict and grant a new trial upon exceptions, *or for insufficient evidence,* or for excessive damages, but such motions, if heard upon the minutes, can only be heard at the same term at which the trial is had" (italics ours). While 14 Enc. of Pl. & Pr., 764, does contain the language quoted in the opinion of Mr. Chief Justice Pope, under the head of "Inadequate Damages for Torts—Common Law Rule," it also adds immediately thereafter these words: "But the modern rule is that a new trial may be granted, in actions for torts, where the verdict is grossly inadequate, for the same reasons as those governing where the verdict is excessive." And under the head of "Code Provisions," on page 766, it also says: "The Code provisions as to new trials for inadequate damages appear in general to be merely decla-

ratory of the common law. In some States the Codes have been amended so as to permit new trials where the verdict is so inadequate as to indicate passion or prejudice. In the absence of such amendment, a new trial may be granted for inadequate damages, on the theory that *the verdict is contrary to the evidence* (italics ours). In 16 Ency. of Law, 591 (1st ed.), it is said: "Where a verdict gives grossly inadequate damages to a plaintiff, it is as much a ground for a new trial upon the motion of the plaintiff as a verdict for excessive damages would be, upon the motion of the defendant." In a note on the same page, the following language is quoted from *McDonald* v. *Walter,* 40 N. Y., 551: "A verdict for grossly inadequate amount stands upon no higher ground in legal principle nor in the rules of law or justice than a verdict for excessive or extravagant amount. It is doubtless true, that instances of the former occur less frequently because it is less frequently possible to make it clearly appear that the jury have grossly erred. But when the case does plainly show such a result, justice as plainly forbids that the plaintiff should be denied what is his due as that the defendant should pay what he ought not to be charged." The case of *Benton* v. *Collins,* 47 L. R. A. (N. C.), 33, is well considered and fully sustains our views upon this question.

The cases from our reports, cited in the opinion of Chief Justice Pope, while showing that the courts should cautiously exercise the right to grant new trials for inadequacy in the amount of the verdict, nevertheless clearly lay down the principle that the Court has the *power* to grant a new trial in such cases. See, also, *Stuckey* v. *R. R.,* 57 S. C., 395, 38 S. C., 550, and cases therein cited, which even show that the Circuit Judge may, in his discretion, impose conditions upon granting a new trial.

*Second exception.* Assignments of error "a," "b," "c" and "d" will be first considered. The only ground of objection interposed by the defendant to the introduction of the testimony on the trial of the case, in the Circuit

Court, was that it was incompetent. This objection failed to specify in what particular the testimony was inadmissible, and is, therefore, too general to be considered. But waiving this objection and considering the grounds set forth in the exceptions, they cannot be sustained, as the testimony was explanatory of the method for operating the appliances.

Assignment of error "e." In the first place, the witness testified that a larger force of hands would *not* have been safer in this case; and, in the second place, the testimony was responsive to the issues made by the pleadings.

*Third execption.* The jury informed his Honor, the presiding Judge, that they had decided that it would be of no benefit to them to visit the place where the accident occurred. It was wholly within the discretion of the presiding Judge whether he would send the jury to view the place where the injury occurred, and under the circumstances his discretion was properly exercised.

*Fourth exception.* When the presiding Judge spoke of "this extra work," he did not mean to decide the question of fact, but only to refer to the extra work mentioned in the pleadings, which he had just explained to the jury, and which he pointed out as an issue in the case.

*Fifth exception.* The charge embodied a sound proposition of law, and if the defendant desired further explanation of the principle therein stated, it should have prepared requests to that effect.

*Sixth exception.* The charge mentioned in this exception is to be considered in connection with other portions of the charge. By reference to the charge set out in the seventh exception, it will be seen that the appellant had the benefit of the principle as the proximate cause of the injury.

*Seventh exception.* The charge as modified conformed to the principle stated in *Harrison* v. *Berkeley,* 1 Strob., 525 (cited with approval in *Pickens* v. *R. R.,* 54 S. C., 503, 32 S. E., 567), in which the Court says: "It is required that the consequences to be answered for, should be natural as well as

proximate. By this I understand, not that they should be such as upon a calculation of chances would be found likely to occur nor such as extreme prudence might anticipate, but only that they should be such as have actually ensued one from another, without the occurrence of any such extraordinary conjunction of circumstances or the intervention of any such extraordinary result, as that the usual course of nature should seem to have been departed from."

*Eighth exception.* The presiding Judge said: "I refuse to charge you that, that way. I charge you that request as follows: 'If the jury believe that the cause was the accidental falling of one of plaintiff's coworkers, and that this fall, I have added, *or its consequences was not due to* the negligence of the railway company, then the plaintiff cannot recover.'" The authority last cited sustains the charge as modified.

*Ninth exception.* His Honor said: "I cannot charge you that way, but I charge you that with this modification, and you will pay attention now to the charge as I now read it to you: 'If the jury believe that the force of hands furnished the plaintiff was sufficient and safe for doing the work in hand in a different way from that which he adopted, then the plaintiff cannot recover, if the evidence shows that his injury resulted from his *negligence, from his negligent* use of the force for the work in a more dangerous way, unless the evidence also shows that he was directed or required by his employer to adopt such more hazardous way.' That is for you. Take into consideration the facts as they presented themselves to plaintiff on that occasion. Was he negligent? Did he lack ordinary care in the way in which he handled those rails? Gentlemen of the jury, in handling them, did he fall short of that standard, the standard of ordinary care? If you find that he did, and that caused the injury, then, why then, of course, under the charge which I have given you, he contributed to his own injury. If you find on that occasion that he didn't fall short of the standard, taking everything into consideration, he handled the rails with the force of

hands just as an ordinarily prudent man would have been expected under the same circumstances, he would not be guilty of a lack of ordinary care. Then, if defendant was negligent, you cannot charge him with contributory negligence." The request to charge was objectionable, for the reason that it undertook to say what facts would constitute negligence. Even if the evidence showed that the plaintiff's injury resulted from his use of the force for the work in a more dangerous way, and also that he was not directed or required by his employer to adopt the more hazardous way, nevertheless, it was for the jury to draw the inference therefrom, and to determine whether such facts constituted negligence.

*Tenth exception.* The case of *Youngblood* v. *R. R. Co.*, 60 S. C., 9, 38 S. E., 232, shows that the request to charge was properly refused, in which the Court uses this language:

"Sec: 15, art. IX., of the Constitution sets at rest any doubts that might be entertained on this question. It provides that 'Knowledge by an employee injured by the defective or unsafe character or condition of any machinery, ways or appliances, shall be no defense to an action for injury caused thereby, except as to the conductors or engineers in charge of dangerous or unsafe cars or engines voluntarily operated by them.' In other words, where an employee is injured while voluntarily operating machinery after knowledge of its unsafe condition, his action for injury caused thereby shall not be defeated by reason of this fact. The word 'defense' is not used in its technical sense. The words, 'shall be no defense to an action,' are to be understood as meaning, 'shall not defeat an action.' The Constitution did not intend to deal with pleadings but with a principle of law. It did not intend that a defendant on a motion for nonsuit should get the benefit of a state of facts which the Constitution declared should be no defense to the action. The object of this provision was to take from a defendant *that failed to furnish suitable machinery,* the right to defeat an action by the employee by showing that he did not act

with due care in voluntarily operating the machinery after knowledge of its defective condition.

*Eleventh exception.* This exception is likewise disposed of by the case last mentioned.

*Twelfth exception.* There was testimony to sustain the finding of the jury. This exception must, therefore, be overruled.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE JONES *concurs.*

MR. CHIEF JUSTICE POPE *dissenting.* This is the second visit of this action to this Court. The jury at the first trial gave the plaintiff $2,400 damages. A new trial was ordered by this Court. See 61 S. C., 468, 39 S. E., 715. At the time of new trial before Judge Ernest Gary and a jury, a verdict for $1,000 was given the plaintiff, but on the ground of inadequacy of verdict, the Circuit Judge ordered a new trial. At the third trial before the Hon. Joseph A. McCullough, as special Judge, and a jury, a verdict for $3,000 was given the plaintiff. After entry of judgment on this last verdict, the defendant gave notice of its appeal from the order of Judge Ernest Gary granting a new trial, and also its appeal from the judgment for $3,000. Exceptions were exhibited against the order of Judge Ernest Gary and the judgment for $3,000. It is apparent that if the order of Judge Ernest Gary is untenable, because erroneous, there is no necessity to consider any of the grounds of appeal in the last case, for if Judge Ernest Gary was in error, the verdict for $1,000 still remains a valid verdict, and the judgment for $3,000 must be set aside as a nullity. We will, therefore, first consider the exceptions presented to Judge Gary's order for a new trial.

It will be proper to state what the character of the action is as stated by the pleadings and the judgment of this Court in this action, as found in 61 S. C., 468, 39 S. E., 715.

Mr. Justice Jones, in passing upon the issues as pre-

sented by the pleadings, said: "This appeal comes from a verdict and judgment in favor of plaintiff in an action for damages for personal injuries alleged to have been sustained through defendant's negligence in failing to furnish an adequate force of laborers to do the work required of the plaintiff as section track foreman, in the hauling and piling of steel rails, after application for additional help by the plaintiff, and promises of defendant to supply the same. The sixth paragraph of the complaint alleged: 'VI. That on the 15th day of February, 1900, while the plaintiff, in compliance with the orders of the defendant, was trying with the assistance of his three hands to carry one of the said steel rails up an embankment for the purpose of loading it on his car, and hauling and piling it, as aforesaid, one of the said hands was entirely overcome and exhausted by the great weight of the said steel rail, on account of the failure of the defendant to furnish a sufficient force to carry the same, and fell to the ground, thereby causing the whole weight of one end of the steel rail to be thrown on the plaintiff, by which his right leg was knocked out of place, his back injured and a great strain put upon his whole body, causing a lesion of his kidneys and other internal organs.' Besides the general denial, the defendant interposed as special defenses, contributory negligence and assumption of risk after knowledge." As before stated, at the trial before Judge Ernest Gary and a jury, a verdict for $1,000 was given to the plaintiff. Just then the "Case" for appeal is as follows: "The plaintiff's counsel moved on the minutes of the Court for a new trial on the ground of inadequacy in the amount of the verdict. Against the objection of defendant's counsel, this motion was granted, and a new trial ordered— the presiding Judge signing the following order: 'The jury charged with the above stated case having rendered a verdict in favor of the plaintiff for $1,000, and it appearing to the Court that if he was entitled to recover any sum at all, the said amount is inadequate, on motion of Caldwell & Park and Graydon & Giles, plaintiff's attorneys, it is ordered, that

the said verdict be set aside and a new trial granted.' " ·No notice of appeal was given and no exceptions were taken immediately after this order for a new trial, and no notice of appeal ·nor exceptions taken to said order until after the judgment on the verdict for $3,000 was entered.

The grounds of appeal as to the order for a new trial was as follows: "I. The defendant excepts to and appeals from the order or judgment of Judge Gary, setting aside the verdict rendered on the trial before him and granting a new trial,. on the ground that the Circuit Judge did not have the power to grant such new trial for inadequacy of the amount of the verdict rendered, and it was error of law for him to ·do so." In considering the error alleged, we will *first* examine the question as to the right of the appellant to maintain his appeal under the law of this State governing appeals. Then we will examine the right of the Circuit Judge, under the rules of the common law, to grant a new trial for inadequate damages awarded by the jury. And lastly, what the rule is as fixed by our decisions and statutes on this subject.

1. Has the defendant the right of appeal from Judge Gary's order for a new trial because the damages awarded were inadequate. We have before stated that all that the ·defendant did at the time of the order for new trial was made by Judge Gary was to object to the passage of such order. It must be manifest that when this order was made, the whole proceeding of the second trial became as if nothing had been done, so far as the trial was concerned; that the action stood for trial just as it did when the Court awarded a new trial, as laid down in 61 S. C., 468, 39 S. E., 715. There having been a verdict for the sum of $1,000 for the plaintiff before Judge Gary, this verdict was wiped out, at the instance of plaintiff. Was this not a material matter to the defendant? Now, there can be no doubt that it was in the power of the defendant to have appealed from that order forthwith after its passage. Section 11 of the Civil Code of this State "D," under subdivisions 1 and 2, amply provide

for an appeal from an order of this character, for in (1) it is provided, "Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the Court of Common Pleas * * *" and in (2) "an order affecting a substantial right made in an action, when such order determines the action and prevents a judgment from which an appeal might be taken * * * and when such order grants or refuses a new trial * * *" Thus it is shown that an appeal could have been taken as soon as the order was made. Could the defendant safely await the rendition of a final judgment before special Judge McCullough, at which time he gave notice of appeal from Judge Gary's order and exhibited his ground of appeal there'from. Under' section 11 of the Civil Code of South Carolina, at page 7, under subdivision 1, it is provided, "Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the Court of Common Pleas * * * brought there by original process * * * *Provided*, if no appeal be taken until final judgment is entered, the Court may, upon appeal from such final judgment, review any intermediate order or decree necessarily affecting the judgment not before appealed from." In construing this provision, this Court has held that such intermediate orders, where no notice of appeal was given and no exceptions taken at the time the intermediate order was made, that an appeal from such intermediate order may be taken along with the final judgment appealed from—*Hyatt* v. *McBurney*, 17 S. C., 150; *Lee* v. *Fowler*, 19 S. C., 607; *McCrady* v. *Jones*, 36 S. C., 136, 15 S. E., 430; *Morgan* v. *Smith*, 59 S. C., 49, 37 S. E., 43, and many other cases cited on page 8 of the Code of Proc. We hold, therefore, that the order was appealable, and that the appeal could be heard by this Court on the hearing of the final appeal in this case.

2. Could the Circuit Judge (Judge Ernest Gary) base his order upon the rules of the common law relating to orders for new trials because of inadequacy of verdict? In the 14th volume of Encyclopedia of Pleading and Practice, 764, the

21—66

following statement is made: "Inadequate Damages for Torts—Common Law Rule. At common law, new trials were not granted on the ground that the damages awarded for torts were inadequate or insufficient; at least, such was the rule as to damages for trespass and slander, which were regarded as analogous to prosecutions for crime. It was also said that where there was no legal measure of damages, the verdict should be conclusive. The rule was to some extent influenced by a rule of Court, that a new trial would not be granted where the verdict was small in proportion to the costs required for a new trial." Again, the same work, at page 765, under the heading, "New Trials for Inadequate Damages Not Granted at Common Law," is the following: "There has never been a doubt that the power to grant new trials for excessive damages exists at common law, as well in actions *ex delicto* as in actions *ex contracto,* but smallness of damages seems not to have been ground for a new trial, at least in actions of trespass, until it was made such by statute apparently for no better reason than that actions for torts, at least actions of trespass *vi et armis,* were considered as bearing an analogy to prosecutions for crimes, as to which it is an admitted doctrine, that whilst a new trial may be granted upon the application of the accused upon the ground that the punishment inflicted by the jury is too great, no such application is allowed on the part of the commonwealth, because the penalty assessed by the jury is too small." We might cite many other authorities, but upon reflection it seems the foregoing citations are sufficient to establish the proposition that, under the common law, the trial Judge had no right to pass the order.

3. What is the rule as to granting new trials in cases of personal injuries, when the plaintiff conceives his verdict to be inadequate, established in this State both by our decisions and our statutes? We remark, that in the year 1789 (see 7 Stat. at Large, p. 253), our General Assembly enacted as follows: "That from and after the sitting of the several Circuit Courts next ensuing, the said Circuit Court shall

(have) and they are hereby declared to possess and shall be capable of exercising the same complete and original and final jurisdiction as possessed and exercised by the Courts of General Sessions of the peace and of Common Pleas now held in Charleston unless otherwise directed by this act according to the custom, usages and practice of the said courts; any law, custom or usage to the contrary notwithstanding." The common law of England was made of force in this State to govern the courts as they existed in this State prior to 1789; but a more generous holding of the courts in this State was provided by this statute in the year 1789, and the object of this statute was to clothe these new Courts of Common Pleas with all the power formerly exercised by the Courts that were confined to the city of Charleston. This statute remained of force until the year 1872, when it was formally repealed. But in the year 1868, in September, an act was passed by the General Assembly of this State, by which it was enacted in section 1, Circuit Judges "shall have the power to grant new trials in cases where there has been a trial by jury for reasons for which new trials have usually been granted in the courts of law of the United States." See 14 Stat. at Large, page 139. This provision was adhered to in the General or Revised Statutes adopted in 1872. However, the General Statutes of 1882 changed this by striking out the words "of the United States," and inserting the words "of the Courts of Law of this State." See section 2113 of General Statutes of 1882. And so the law stands till to-day. See section 2734 of the Code of 1902. Thus it is made necessary for us to see by examination of our decisions what were the reasons given for granting new trials as they have been usually granted. We find but two decisions when new trials were granted because of inadequacy of verdicts in cases of personal injuries. These are *Bacot* v. *Keith,* 2 Bay's Reports, 466; *Wallace* v. *Frazier,* 2 Nott & McCord's Reports, 516. In the former, where there was a ferocious assault and battery, the jury only accorded the plaintiff one dollar of

damages. The Court of Appeals declared, "The Judges were unanimously of the opinion that the jury in this case had behaved most shamefully, and deserved the severest reprehension of the Court for such glaring partiality and injustice. And although *it was not usual to* grant new trials on account of the smallness of damages, yet this was so extraordinary a case, in which every principle of justice has been outraged, that they could not hesitate a moment in ordering a new trial and that without costs." In the latter case, it was a suit to recover damages for the breach of a warranty in writing, for the soundness of a negro which was really unsound. This was, therefore, *ex contractu.* The jury found for plaintiff one cent damages. The Court ordered a new trial, and said: "The testimony on the point was clear and uncontradicted, and the jury was not authorized to disregard it and adopt an arbitrary rule of their own, unsupported by any testimony. The verdict was clearly against the evidence, and a new trial must be awarded." Now, we come to examine cases in our reports on the subject granting new trials for verdicts for excessive damages. Many cases will be found sustaining that right—*Bourke* v. *Bulow,* 1 Bay, 49; *Nettles* v. *Harrison,* 2 McCord, 230; *Richardson* v. *Murray,* Cheves Law, 11; *Morgan* v. *Livingston,* 2 Rich., 581; *Mayson* v. *Sheppard,* 12 Rich., 254; *Poppenheim* v. *Wilks,* 2 Rich., 354; *Fripp* v. *Martin,* 1 Speer, 236; *Davis* v. *Ruff,* Cheves Law, 17; *Scott* v. *Ryan,* 3 Brevard, 417. It was well said, "That Courts have no right to annul the verdict of a jury solely on account of the smallness or insignificance of the sum allowed, is well settled. They have the authority only where gross injustice clearly appears *aliunde* the verdict It is a power the courts are loth to exercise, for in no case is there greater danger of usurping the exclusive function of the jury. In actions of the nature of the one at bar there is no measure of sums." "No custom, or market, or law fixes a value to the injury done, and, therefore, the law has made it the exclusive and peculiar province of the jury to name the amount to which

a plaintiff may be entitled. No other judgment or opinion must be substituted for the combined judgment and opinion of the jury."

But what is our statute law on this subject? Very clearly provision is made for the grant of a new trial for excessive damages by the Circuit Judge, but no mention is made therein of the power of a Circuit Judge to grant a new trial for inadequacy of the verdict in cases of personal injury. Our Code of Civil Procedure, under section 286, in the 4th subdivision, provides, "The Judge who tries the cause may in his discretion entertain a motion to be made on his minutes, to set aside a verdict and grant a new trial upon exceptions, or for insufficient evidence, or for *excessive damages;* but such motions, if heard upon the minutes, can only be heard at the same term at which the trial is had." This has been the statute law of this State for years. We thus see that the motion granted by the Circuit Judge in the case at bar was not sanctioned by the common law nor was it sustained under the statutes of this State, as is shown by the decisions of our Court. It was not a usual course in our Courts to grant motions for a new trial upon the inadequacy of verdicts of juries. An examination of our Reports will fail to disclose an instance where a verdict of $1,000 in a suit for $10,000 has ever been held as an inadequate verdict. The very fact that every Code of this State has provided the power in Circuit Judges to grant new trials for excessive damages, and in no instance has provided for power in Circuit Judges to grant new trials for inadequate damages, is a strong circumstance. To admit the existence of this power in the Circuit Judges without a line of authority therefor, is fraught with great danger.

This conclusion renders it unnecessary to consider any other questions presented by this appeal. In my opinion, it follows that we must reverse and set aside all the proceedings before special Judge Joseph A. McCollough, and order the action remanded to the Circuit Court, with directions to that Court to carry out our judgment, reversing the order

for a new trial granted by Judge Ernest Gary, with leave to the plaintiff to enter up his judgment on the verdict for $1,000 rendered by the jury in the trial of this action had before the Hon. Ernest Gary as Circuit Judge.

Petition for rehearing was refused by following *per curiam* order, filed May 18, 1903:

    After careful examination of the petition for a rehearing in this case and the Court being satisfied that no material question of law or of fact has either been overlooked or disregarded.

It is ordered, that the petition be dismissed, and that the order heretofore granted staying the remittitur be revoked.