7042

### RUTLAND v. SOUTHERN RY.

1. CARRIER—BILL OF LADING.—When a terminal carrier receives goods of its connecting carrier under a bill of lading and delivers same to consignee, it cannot object to introduction of bill of lading because there is no proof of its correctness, genuineness or execution.

2. IBID.—EVIDENCE—RES GESTAE.—DECLARATIONS of a claim agent of a carrier while attempting to adjust a claim for lost freight is admissible against the carrier as part of the *res gestae.*

3. CARRIER—FREIGHT.—There was no evidence in this case as to the difference between the market value of the freight when it should have arrived and when it was delivered to support the verdict. In such investigation the carrier is not concerned as to whether the market price included profits on the particular shipment.

Before WILSON, J., Lexington, February, 1908. Reversed.

Two actions by M. E. Rutland against Southern Railway. From judgment for plaintiff, in both cases, defendant appeals.

*Mr. E. M. Thompson,* for appellant, cites: *Bill of lading of N. Y. C. & H. River Railroad improperly admitted:* 58 S. C., 247; 79 S. C., 217; 74 S. C., 332; 78 S. C., 38; 112 Ga., 165. *Declarations of agent not admissible:* 17 S. C., 520; 27 S. C., 64; 28 S. C., 157. *The measure of damages for delay in delivering goods:* Hutch. on Car., sec. 1366, 1369; 9 L. R. A., 451; 23 Eng. Rul. Cas., 545; 75 S. C., 342; 76 S. C., 341; 7 Rich. L., 190; 6 Cyc., 450, 525; 71 S. C., 82; 75 S. C., 351; 10 Cush., 177; 25 S. C., 68.

*Messrs. Efird & Dreher,* contra, cite: *Burden of showing excuse for delay is on defendant:* 78 S. C., 81. *Declarations of agents, as part of res gestae, admissible:* 1 Ency., 1143.

November 16, 1908.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.  These two cases were commenced in the Court of Common Pleas for Lexington county, July 9, 1907.  By agreement of counsel the two cases were tried together before Hon. John S. Wilson, presiding Judge, and a jury, at Lexington, S. C., February 11, 1908, it being agreed, except as to the officers of Court, only one set of costs was to be taxed.  The complaints are as follows:

"The plaintiff, complaining of the defendant, alleges:

1. "That the defendant is a common carrier of passengers and freight, incorporated under the laws of the State of Virginia, and owns tracks, rolling stock, does its business as a common carrier, and has and maintains freight depots and offices in said county and State, one of which is at Batesburg, in the County of Lexington and State of South Carolina, on the line of railroad of said defendant company, which extends from the City of Columbia, through said county, on to the City of Augusta, Ga.

2. "That previous to the second day of November, 1906, the plaintiff bought of the Oxford Buggy Company, of Oxford, N. C., twenty-five top buggies.

3. "That on the second day of November, 1906, the said Oxford Buggy Company delivered to the said defendant, a common carrier of freight, at the station of Oxford, N. C., on defendant's line of railroad, the said twenty-five buggies and shafts, to be transported by the defendant over its lines of railway from the said station of Oxford to the station of Batesburg, S. C., to be by it delivered to this plaintiff. That the defendant accepted the said shipment and issued its bill of lading therefor on the second day of November, 1906.

4. "That by ordinary diligence the defendant could have transported and delivered the said freight to the plaintiff at Batesburg, S. C., on or before the sixth day of November,

1906; but by reason of its negligence, carelessness and un-
reasonable delay in transporting said freight, it did not
arrive at Batesburg until February 5, 1907, which delay
greatly misput plaintiff in his business, caused him to buy
other buggies for his trade, greatly inconvenienced him, and
when the said shipment did arrive he had no need for the
said buggies, and no sale for them at regular market prices.

5. "That some time after the arrival of the said shipment
plaintiff accepted the said buggies from the defendant, under
protest, paid the freight charges thereon, and sold the same
to the best advantage on the market for $1,350.

6. "That if the said buggies had been delivered at Bates-
burg, S. C., within a reasonable time after delivery to the
defendant carrier, the same would have been worth to the
plaintiff the sum of eighteen hundred and seventy-five dol-
lars, for which amount he could have sold them. Hence,
by reason of the said unreasonable delay, carelessness and
negligence on the part of the defendant in the handling and
transporting of said freight the plaintiff was damaged in
the sum of five hundred and twenty-five dollars by the said
defendant.

"Wherefore, plaintiff demands judgment against the de-
fendant for the sum of five hundred and twenty-five dollars,
with interest from November 6, 1906, and his costs and dis-
bursements."

The complaint in the second case is practically the same
as in the first case, except as to the time of shipment, the
name of the parties, and the amount claimed; the amount
being $455. The answer of the defendant, in each case, is
a complete denial.

The presiding Judge charged the jury in part as follows:
"It is for you to say  *  *  *  what the market value
of the goods at the time they ought to have been deliv-
ered  *  *  *  and at the time they were received." The
jury rendered a verdict in favor of the plaintiff for $375

in the case for $525 damages, and $240 in the case for $455 damages.

A motion was then made for a new trial. which was refused.    After entry of judgment, the defendant appealed to this Court upon five grounds, which we will now consider.

1. "Excepts because his Honor erred in admitting in evidence, over the objection of defendant, the bill of lading of New York Central and Hudson River Railroad Company, of date October 20, 1906; whereas, it is submitted, that the foundation had not been laid for its introduction, no evidence having been offered as to genuineness and correctness, nor any proof as to its execution." The first ground of appeal is overruled, because the Southern Railway actually received and delivered the freight under the bill of lading.   The ruling was harmless.

2. "Excepts because his Honor erred in allowing the plaintiff to testify, over the defendant's objection, what Mr. Adams told him about the carload of buggies from Watertown, N. Y.; whereas, it is submitted. that there was no evidence showing that the alleged statements of Mr. Adams were within the scope of his authority as agent of the defendant company, or in any way binding upon the defendant company." It appearing that Mr. Adams was claim agent, with duty to adjust and pay claims against defendant, and that the declaration was made while atempting to adjust plaintiff's claim, we hold that Mr. Adams was acting within the scope of his authority as agent of the Southern Railway, and, therefore, overrule this exception.

3. "Excepts because his Honor erred in overruling the first ground of the motion for new trial, the same being as follows : 'Because there is no evidence to support the verdict.' It is submitted that no construction of plaintiff's testimony will support the respective verdicts of $375 and $240, as being the difference between the

market value of the buggies when they did arrive and when they should have arrived."

There was evidence that plaintiff had storage room for the buggies, if they had arrived within a reasonable time after shipment, and of what he could have realized at that time in the Batesburg market by gradually selling them from his warehouse in the usual course of trade. There was also evidence that when the buggies did arrive, after long delay, the plaintiff did not have storage room, and that he, therefore, threw them on the market and sold them for cost. But there was no evidence that the defendant undertook the carriage, contemplating that if the shipment should be delayed the plaintiff would be unable to store the buggies. The defendant was not liable for the difference in price realized by a forced sale, due to lack of storage capacity when the goods arrived, and the price plaintiff might have obtained by sales in the usual course of his business if the buggies had arrived in due time. The evidence should have been directed to the difference in the market price of the buggies at the time of actual delivery and the time when they should have been delivered, due to variation in the Batesburg market. The verdicts were not supported by any evidence on this issue.

It may be well to say, further, that in the trial of this issue the defendant has no concern with the plaintiff's profits—that is, whether he bought the buggies at a high or low price. The measures of damages for the delay would be the same, whether the plaintiff had shipped buggies which had been given to him or which he had been deluded into buying at ten times their value. In either case, where the goods are manifestly intended for sale, the measure of damages would be the difference in the market price at the point of destination at the time they ought to have been delivered and market price at the time of actual delivery.

The judgment of this Court is that the judgment of the Circuit Court should be reversed, and a new trial granted.