### MIDDLETON & CO. v. ATLANTIC COAST LINE R. CO.

#### (130 S. E., 552)

1. APPEAL AND ERROR—IN LAW CASE, EXCEPTIONS WILL NOT LIE TO FINDINGS OF FACT BY MASTER, CONFIRMED BY COURT.—In law case exceptions will not lie to findings of fact by master, confirmed by court.

2. CARRIERS—MEASURE OF DAMAGES FOR DELAY IN DELIVERY BY CARRIER STATED.—Measure of damages for unreasonable delay in delivery by carrier is difference between market price on day goods should have been delivered and on day of actual delivery, regardless of whether or not sale immediately on delivery was intended.

3. CARRIERS—PROOF OF ACTUAL SALE PRICE OF COTTON NOT NECESSARY, IN ACTION FOR DAMAGES FOR UNREASONABLE DELAY IN TRANSPORTATION.—In action against carrier for unreasonable delay in transportation of cotton, proof of actual sale price after delivery was unnecessary; measure of damages being difference between market value when cotton should have been delivered and when actually delivered.

4. APPEAL AND ERROR—IN LAW ACTION APPEAL WILL NOT LIE FROM DECREE CONFIRMING MASTER'S REPORT, IN ABSENCE OF SHOWING OF FINAL JUDGMENT.—In law action for damages for unreasonable delay in transportation of cotton, where it was not made to appear that judgment was entered on decree or order of circuit judge confirming master's report which, under Code Civ. Proc. 1922, § 589, amounted to no more than verdict of jury, *held* appeal by plaintiff, dissatisfied with amount of recovery, would not lie, especially in absence of motion for new trial and denial thereof.

5. APPEAL AND ERROR—WHERE PLAINTIFF'S RECOVERY IN LAW ACTION IS INSUFFICIENT, REMEDY IS BY MOTION FOR NEW TRIAL AND APPEAL FROM DENIAL THEREOF.—Where recovery allowed a plaintiff by decree or order confirming master's report in law action is insufficient, plaintiff's remedy is by motion for new trial and appeal from denial thereof.

6. APPEAL AND ERROR—IN A LAW ACTION, COURT CANNOT, EXCEPT INDIRECTLY, ADJUST VERDICT.—In law action, court has no power to adjust verdict, except indirectly, by granting new trial to aggrieved party, unless adverse party consents to change in verdict.

Before MAULDIN, J., Charleston, November, 1924. Appeals dismissed and case remanded for entry of judgment.

Action by Middleton & Co. against the Atlantic Coast Line Railroad Company. Master's report for plaintiff in insufficient amount was confirmed by the circuit judge, and both parties appeal.

The following are the master's report, and the decree or order of the circuit judge confirming it, and defendant's exceptions, except the third, which appears in the opinion:

### REPORT OF FACTS AND LAW

To the Honorable the Court of Common Pleas for Charleston County, the undersigned master respectfully reports:

The master's findings of fact and conclusions of law, upon the issues herein raised, reported to this court on November 4, 1920, were reviewed by the Supreme Court, at the October term, 1921, and the case was remanded for trial *de novo,* upon the principles announced. 118 S. C., 351; 110 S. E., 796.

As was shown by such report, this action was brought to recover damages from the defendant, Atlantic Coast Line Railroad Company, alleged to have been sustained by the plaintiffs, Middleton & Co., by reason of falls in prices of cottons, shipped to them over the rails of the defendant company, between the times that such shipments should have arrived and did arrive. Issue was joined to the right of the plaintiffs to sue for losses upon cottons shipped to them as factors.

It was held by the Supreme Court that the cottons in question were consigned to the plaintiffs, with drafts attached to the bills of lading, "virtually a sale to the plaintiffs, who acquired title upon payment of the drafts."

To establish the times within which the cottons should have been delivered, the plaintiffs relied upon the standards of reasonable time for transportation of freight, by common carriers, fixed by Civil Code of 1912, Vol. 1, § 2568. This standard, the Supreme Court holds, cannot be invoked, except in an action for damages, under the statute of which

the above section is a part, and the plaintiffs are required to establish the fact of unreasonable delays, independently of the statute.

A specific method is outlined by the Supreme Court by which the plaintiffs must prove their damages, as follows: "(1) The date of shipment; (2) the date of delivery; (3) that there was unreasonable delay in the transportation; (4) damages resulting."

There is no issue between the parties to this action as to the times of shipment and delivery, as set out in the exhibit to the complaint.

"Ordinarily," the Supreme Court held on the hearing of this case, "when goods are shipped with the expectation and intention of immediate sale upon delivery, the measure of damages is the difference between the market price on the day the goods should have been delivered and that on the day of actual delivery."

The master finds, from testimony submitted at the re-hearing before him, that the cottons in question were shipped with the expectation and intention of immediate sale upon delivery, and were actually so sold.

There is no issue between the parties as to the volume of the several shipments, the points of origin and their distances from Charleston, the place of delivery, the time of shipment and delivery and the market prices of cottons on the several days covering the periods of transportation as set out in the exhibit to the complaint; it only remains to be determined what shipments were unreasonably delayed in transportation and the damages thereby sustained.

Two questions have been raised, since the former hearing, by amendments to the complaint and answer—the plaintiffs claiming legal interest on losses, from the dates that delayed shipments should have arrived; the defendant contending that the delays complained of were occasioned by "a heavy unprecedented traffic at the time mentioned in the complaint, not reasonably to be expected or prepared for."

No decision of the Supreme Court of South Carolina has been cited to sustain the plaintiffs' claim of interest. In the judgment of the master, claims of the kind in question are unliquidated and do not bear interest. In Corpus Juris, vol. 33, p. 210, subject, "Interest—Unliquidated Demands," is this summary of the law: "In order to recover interest there must be a fixed and determinate amount which could have been tendered and interest thereby stopped."

The claims in suit have been in litigation for several years, and no definite amount has been reached, as payable by the defendant to the plaintiffs; even the principles upon which such amount should be ascertained have been and are still in dispute. Interest on claims herein should not, the master thinks, be allowed.

With respect to the claim of "unprecedented heavy traffic" which the defendant could not foresee and prepare to handle, the testimony does not sustain the contention. There is always a considerable increase in the volume of freight billed for transportation by the railroads, when cotton crops are being marketed, in the fall months of every year, and that of the season 1911, the period in question, is not materially larger than that of 1910; the cotton crop shipped in 1910 being 213,713 bales, and in 1911, 233,960 bales, for the months of October, November and December.

"Crop conditions are reported by the government semi-monthly and by the New York Cotton Exchange daily." Testimony at rehearing, page 14. Such reports are made from May to October.

No embargo was laid upon cotton in 1911 and defendant accepted all of it that was offered for transportation.

The master thinks that the plea of "unprecedented heavy traffic" should be disallowed.

Testimony was introduced to show that small consignments of cotton were frequently drawn by way freights, which are slow, and these small consignments could not be delivered in as short times as consignments transported on

through freights, which are fast, a conclusion which is manifest. No attempt was made, however, to show which of the consignments in question, were hauled by way freights. Small lots of cotton are also loaded into cars with other cottons, to make up carload lots, and move on through trains.

No testimony whatsoever has been offered to show how the several consignments were hauled, and the master assumes that the cottons in question were brought down in carload lots by through trains, because this method of transportation is more convenient, expeditious, and businesslike, than the loading of them with mixed freight.

Upon the rehearing, it was agreed by counsel, that testimony taken at the former trial should be considered, subject to objections raised when offered; such testimony is attached to the report herein dated November 4, 1920. Testimony taken at the rehearing is hereto attached as a part of this report.

Witnesses for both plaintiffs and defendant agree that, under normal conditions of traffic, three days are sufficient time for the hauling of cotton to Charleston, from any part of the State. In the judgment of the master, the traffic conditions during the cotton season of 1911 were not abnormal for reasons above assigned. All of the points of origin of shipments of the cottons in question are in South Carolina. An inspection of the exhibit attached to the complaint shows that more than three days elapsed between shipments and deliveries of each and all of the consignments in question.

The master therefore finds that there was unreasonable delay in the deliveries of the cottons in question, and he holds that the plaintiffs are entitled to judgment for the amount claimed.

The master's finding as to the amount of damages sustained by the plaintiffs is based upon the differences of market values of the cottons, between the times they should have arrived and did arrive, as set out in the exhibit to the complaint, made up from the records of the Charleston

Cotton Exchange, together with testimony that the prices of cotton, during the season of 1911, gradually declined.

In his said report of November 4, 1920, the master's findings of fact and conclusions of law were presented to the Court after careful consideration; the same is made a part of this report, so far as it has been affirmed, by the Supreme Court.

Written arguments of counsel, made at the rehearing of this case, are hereto attached, to show the questions raised before the master, and points and authorities relied upon.

It is respectfully recommended:

I. That the claim of the plaintiffs for interest on the several losses making up their claim in suit, from the days the shipments should have arrived, be disallowed.

II. That the defendant's special plea of unprecedented heavy traffic be disallowed.

III. That the plaintiffs have judgment against the defendant in the sum of $2,895.37.

IV. That the costs of this action be paid by the defendant.

Respectfully submitted.

[Signed]  H. W. Mitchell, Master.

DECREE

The case came up for hearing before the Honorable T. J. Mauldin, presiding Judge, at the fall term of Court, 1924, and the following decree was rendered by him:

This matter comes before me on exceptions filed by both the plaintiffs and the defendant to the master's report. From the record and the written arguments submitted by counsel for the respective parties, it appears that this action was brought to recover for losses sustained by the plaintiffs, due to delay in transportation of cotton shipped by various parties within the State of South Carolina over the railroad of the defendant, and consigned to the plaintiffs at Charleston.

The case was, by consent, referred to the master, who filed his report recommending judgment for the plaintiffs. This report was confirmed by the Circuit Court, and judgment rendered accordingly. From this judgment the defendant appealed to the Supreme Court, and that Court reversed the judgment of the Circuit Court, and remanded the case for a new trial on principles clearly stated by the Court in its opinion. The case has been tried again before the master, who has filed his report again recommending judgment for the plaintiffs, and this report is now before me for consideration.

To take up the exceptions of the defendant, the first is that the master erred in holding that these cottons were shipped with the expectation and intention of immediate sale upon delivery, and were actually so sold. The record shows that a witness for the plaintiffs testified that the plaintiffs had orders to sell this cotton on arrival, and that as a matter of fact it was sold as soon as they could put their hands on it. This testimony does not appear to have been disputed by the defendant, either on cross-examination, or by direct testimony, and, under these circumstances, the master's holding is entirely proper.

The second exception of the defendant alleges error because the master recommended judgment for the plaintiffs, although the plaintiffs had not proven the prices at which these cottons had been actually sold. Our Supreme Court, in this very case, laid down the principle of damages as follows:

"Ordinarily, when goods are shipped with the expectation and intention of immediate sale upon delivery, the measure of damages is the difference between the market price on the day the goods should have been delivered and that on the day of actual delivery."

As stated above, the master correctly found that these cottons were shipped with the expectation and intention of immediate sale upon delivery, so that the measure of dam-

ages in this case would be the difference between the market price on the day the goods should have been delivered and that on the day of actual delivery. The question of the price at which the goods were actually sold would be irrelevant, and evidence of such entirely unnecessary. Moreover, the plaintiffs proved that during this season the cotton market had steadily declined, so that if the actual sales prices had been used as the basis of damages, the damages would have been even greater. Thus the defendant has actually benefited by the rule of damages laid down by the Supreme Court and applied by the master.

The third exception of the defendant alleges error in the master's holding that the defendant's contention as to unprecedentedly heavy traffic was not sustained by the evidence. The master finds in his report that there was unreasonable delay in the transportation of these cottons. The plaintiffs having proven this, the burden of excusing such delay because of unprecedentedly heavy traffic is upon the defendant. In 10 Corpus Juris, 301, the law as to burden of proof is stated as follows:

"However, when evidence of unusual delay is adduced, a *prima facie* case of negligence is made out, and the burden then devolves on the carrier to explain the delay and to show that it arose from some cause other than the carrier's negligence, or that of its agents or servants."

The testimony of the defendant's own witness on this point shows that the rush of business at the season of the year involved in this case when cotton is being moved to market was simply the usual seasonal rush occurring every season, while the plaintiffs introduced evidence showing that the movement for the season involved in this case was only a slight increase over the movements for previous seasons, and further that, from government and market reports, the carrier could be readily informed well in advance of the probable movement. Moreover, no effort appears to have been made by the defendant to show which of these numer-

ous shipments would be excusable because of abnormally heavy traffic, and, the burden being upon the defendant to show excuse, it should have shown definitely as to just what shipments this excuse would apply. Having failed to do so, its burden is not sustained. If its contention is that this excuse would extend over the entire period of three months involved in this case, such contention could not be sustained. The law requires that, if a carrier finds itself confronted by congestion, it may refuse to accept further shipments; but, if under these circumstances it accepts further shipments, it will be held liable for delay, although the delay be occasioned by such congestion. 10 Corpus Juris, 291. There was no evidence whatever of the defendant's having refused to accept any shipments during this period. Thus, whether there was any unusual congestion or not, the defendant would be liable for the delay. Accordingly, the master's finding on this point must be sustained.

The fourth and last exception alleges error in the master's "assuming that the cottons in question were brought down in carload lots by through trains"; the defendant contending that the master should have held "that in some cases cotton had been held necessarily to make up carload lots, which accounted in a reasonable way for any delay in such cases." As stated above, the plaintiffs having established a *prima facie* case, the burden of proving an excuse would be upon the defendant. This case involved a large number of shipments, and no effort appears to have been made by the defendant to show which, if any, of these shipments moved in less than carload lots; the only evidence offered by the defendant on this point being that less than carload lots would consume a longer time in transportation than would carload lots. Such vague evidence is not sufficient to defeat the plaintiffs' *prima facie* case. Moreover, the defendant's own witness testified that under normal conditions three days would be a reasonable time for transportation in these cases. No limitation as to carload lots was placed on this testimony,

and from the defendant's own testimony, the master would be warranted in finding that three days was a sufficient allowance for movements even in less than carload lots. The master's finding on this point, therefore, must be sustained.

As to the exception of the plaintiffs to the master's refusal to allow interest, the master's ruling on this point is sustained on the grounds stated by the master in his report, and this exception is overruled.

For the foregoing reasons, it is hereby ordered, adjudged, and decreed that all exceptions to the master's report be, and hereby are, overruled; further ordered that the said report of the master be, and hereby is, approved and confirmed in all respects, and be, and hereby is, made the judgment of this Court.

### EXCEPTIONS TO DECREE

First. Because the presiding Judge erred in overruling the exceptions to the master's report and directed that judgment be entered thereon for the amount claimed by the plaintiffs.

Second. Because the presiding Judge erred in sustaining the master's holding that the cottons were shipped with the expectation and intention of immediate sale upon delivery and were actually so sold.

Fourth. Because the presiding Judge erred in failing to sustain the contention of the defendant that there was "unprecedentedly heavy traffic," which the defendant could not foresee or prepare to handle at the time of the shipment of the cottons in question.

Fifth. Because the presiding Judge erred in failing to hold under the testimony that in some cases cotton had been shipped as a part of mixed freights, and that in some cases cotton had been held necessarily to make up carload lots, which accounted, in a reasonable way, for any delay in such cases.

*Messrs. Rutledge, Hyde, Mann & Figg,* for defendant-appellant and respondent, cite: *Former appeal in this case:*

118 S. C., 351; 110 S. E., 796. *No interest allowed on un-liquidated demands:* 76 S. C., 180; 64 S. C., 277; 47 S. C., 176; 32 S. C., 357; 30 S. C., 306; Civ. Code 1922, Sec. 3636. *Measure of damages:* 118 S. C., 351; 110 S. E., 796.

*Messrs. E. Willoughby Middleton* and *Henry W. Connor*, for plaintiff, respondent and appellant, cite: *Exception too general:* Rule 5 Supreme Court, Sec. 6. *Findings of fact of Circuit Court conclusive:* 26 S. C., 304; 2 S. E., 116; 23 S. C., 25; 23 S. C., 1. *Measure of damages; interest on claims:* 118 S. C., 351; 110 S. E., 796; 81 S. C., 448; 62 S. E., 865; 3 Hutchinson on Carriers (3rd Ed.), Sec. 1366; 2 Sedgwick on Damages, (8th Ed.), Sec. 854; 5 A. & E. Enc. (2nd Ed.), 384; 4 R. C. L., 931; Dobie on Bailments & Carriers, 512; 134 Ga., 455; 67 S. E., 944; 104 Fed., 728; 126 Fed., 75; 49 Vt., 255; 3 S. W., 814; 85 S. W., 770; 143 S. W., 839; 17 S. W., 834; 62 Tex., 209; 1 So., 765; 100 N. Y. S., 225; 11 S. E., 809; 10 Rich., 382; 76 S. C., 308; 56 S. E., 952; 10 C. J., 396 and 400; 33 C. J., 211; 147 U. S., 591; 111 U. S., 584; 274 Fed., 734; 181 Fed., 962; 155 Fed., 439; 34 Fed., 909; Hale on Damages, 240; Civ. Code, 1922, Sec. 4273. *Pleading and proof of excuse for unusual delay in delivery:* 10 C. J., 299 and 301. *Unusual press of business causing delay:* 10 C. J., 291.

November 23, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages resulting from alleged losses sustained by the plaintiffs on account of unreasonable delay in the transportation of various lots of cotton shipped to the plaintiffs from different parts of the State. It is a law case, pure and simple, and was referred by consent to the master of Charleston County to decide all questions of law and fact. He filed a report recommending judgment in favor of the plaintiffs for $2,895.37, without interest; this report was confirmed by decree of the Circuit Court. The defendant

appealed to this Court, which, in an opinion filed February 27, 1922 (118 S. C., 351; 110 S. E., 796), reversed the judgment of the Circuit Court upon the ground that Civ. Code 1912, § 2568, upon which the plaintiffs relied to establish unreasonable delay, was applicable only to an action to recover the statutory penalty, and that in an action for damages, the plaintiffs must show by affirmative proof their allegation of unreasonable delay.   A trial *de novo* was ordered.

Before this trial was had, the plaintiffs were allowed, by order of Court, to amend their complaint by including a demand for interest upon the losses sustained.  The defendant answered the amended complaint, and, in addition to the general denial, interposed the defense that the alleged delays were due to an unprecedentedly heavy traffic at that time.

Upon the second trial before the master further testimony was introduced, and the master filed a second report, recommending judgment in favor of the plaintiffs for the same amount as before, on the basis of the difference between the market value of the cotton at the time it should have been delivered, and the market value at the time of actual delivery. He found as matters of fact:  (1) That there was unreasonable delay in the transportation; (2) that the cotton was shipped with the expectation and intention of immediate sale upon delivery; (3) that it was actually sold at the time of the belated delivery; (4) that the difference between the market vaule at the time the cotton should have been delivered, and when actually delivered, represented the plaintiffs' loss, in the amount stated.

He held also, as a matter of fact, that the defendant had not sustained its defense of congestion of traffic, and disallowed the plaintiffs' demand for interest.

This report was confirmed in a decree of Hon. T. J. Mauldin, circuit Judge, and from this decree both parties have appealed; the defendant from so much as authorized judg-

ment, and the plaintiffs from the disallowance of interest. It does not appear that formal judgment was entered upon the decree.

The only exception of the defendant which raises an issue of law is the third; all of the others (which will be reported) are attempted appeals from findings of fact in a law case, by the master, confirmed by the circuit Judge, and of course cannot be considered by this Court. The third exception is as follows:

"Because the presiding Judge erred in. sustaining the master's recommendation that judgment be entered against the defendant when there was no testimony before the master showing what, if any, was the actual loss sustained by the plaintiffs, in that there was no testimony showing, or tending to show, the prices at which the cottons had been actually sold."

Upon the former appeal in this case, this Court held:

"Ordinarily, when goods are shipped with the expectation and intention of immediate sale upon delivery, the measure of damages is the difference between the market price on the day the goods should have been delivered and that on the day of actual delivery."

The rule is really more drastic than as above stated, which was a statement directed to the particular case.

The general rule is applied regardless of the intention of the consignee to make immediate sale. See 10 C. J., 309; *McKerrall v. R. Co.,* 76 S. C., 338; 56 S. E., 965; *Nettles v. R. Co.,* 7 Rich., 190; 62 Am. Dec., 409; *Rutland v. R. Co.,* 81 S. C., 448; 62 S. E., 865; *Bullock v. R. Co.,* 82 S. C., 375; 64 S. E., 234.

It is manifest therefore that the defendant had no right to insist upon proof of the actual sale price of the cotton.

We come now to consider the plaintiffs' exception to the decree, upon the ground that the circuit Judge erred in not allowing them interest upon the several

items of damage established. The appeal is not in order. In the first place it does not appear that judgment has been entered upon the decree of Judge Mauldin. His decree or order, confirming the master's report, is not a judgment, for the case is one at law, and his order amounts to no more than the verdict of a jury, from which there can be no appeal. *Wilson v. R. Co.,* 123 S. C., 399; 115 S. E., 764, and cases cited therein. In the case of *Adickes v. Allison,* 21 S. C., 245, the Court said:

"In an action at law, tried by the Court, we do not understand that the decision is the formal judgment in the case under the seal of the Court. It is required to be filed and 'Judgment upon the decision shall be entered accordingly.' "

See Code Civ. Proc., § 589.

If the judgment had been entered upon the order of Judge Mauldin, it would have been for the amount reported by the master, and the plaintiffs would have been in the position of appealing from a judgment in their own favor; the judgment is all that they could have appealed from.

Where in a law case the verdict (and we are now treating the order of Judge Mauldin as a verdict) is for an amount greater than the defendant conceives it should have been, his remedy is to move for a new trial, and upon that motion the circuit Judge may either order a new trial out and out, or order a new trial *nisi,* requiring the plaintiff at his option to remit a certain portion of the verdict or submit to a new trial. Should the circuit Judge refuse the motion, upon a legal ground, the defendant has his remedy by appeal to this Court, which may either affirm or reverse the order below. In the event of affirmance, the case is ended; in the event of reversal, the Court may remand the case, either directing a new trial or a new trial *nisi.* So where the verdict is for an amount less than the plaintiff conceives it should have been, the remedy of the plaintiff is exactly the same.

This Court has no power to readjust a verdict in a law case except in the manner indicated, and that is only through its power to order a new trial conditioned upon the refusal of the terms imposed. It grants a new trial *nisi* in favor of the defendant, unless the plaintiff should reduce the verdict, for the reason that it has no absolute control over the verdict; it cannot readjust it against the will of the plaintiff by reducing it. If it cannot reduce the verdict, it seems clear that it cannot increase it upon the plaintiffs' motion, except indirectly in the manner stated.

To sustain the plaintiffs' appeal and send the case back to the Circuit Court, with directions to include in the judgment what the plaintiffs may be entitled to, would amount to an increase of the verdict, or, what is the same, the amount found by the circuit Judge, sitting as a jury.

In *James v. Morey,* 44 Ill., 352, it is held (quoting syllabus in Am. Dig.) :

"Where a verdict for plaintiff is for too small a sum, and he moves for a new trial on that ground, it is not error for the Court to announce that it will grant the motion, unless defendant consents to a certain increase of the amount of the verdict."

In *West v. R. Co.,* 56 Wis., 318; 14 N. W., 292, the plaintiff appealed upon the ground that he had not been allowed interest upon the amount found due to him by the verdict. The Court held that he was entitled to interest, and, assimilating the situation to that of the defendant moving for a new trial upon the ground that the verdict was excessive, ordered a new trial, unless the defendant would stipulate within a certain time that the verdict be increased to the extent of such interest, showing that the Court had no more power to increase a verdict than to reduce it, except through the indirect method of a new trial *nisi.*

In *Aultman v. Thompson* (C. C.), 19 F., 490, upon a motion for a new trial, the Court held that the plaintiff was entitled to more than the amount of the verdict by a

certain amount, and granted the plaintiff's motion *nisi*, requiring the defendant to consent that judgment for the excluded sum be entered against him or submit to a new trial; enforcing the same rule as is applied where the defendant moves for a new trial upon the ground of an excessive verdict.

In *Gosczinzki v. Carlson,* 157 Wis., 551; 147 N. W., 1018, the plaintiff in an assault and battery civil case had a verdict for $70 damages; he moved for a new trial upon the ground that the damages allowed were inadequate. The trial Judge granted his motion, unless the defendant would within a fixed time file a consent that judgment be entered against him for $250. The defendant appealed. The Court held that the order was proper.

In *Ford v. R. Co.,* 98 Minn., 96; 107 N. W., 817; 8 Ann. Cas., 902, the plaintiff had a verdict of $1 in an action for damages on account of an assault by an employee of the defendant. Upon his motion for a new trial, the Court ordered a new trial unless the defendant within a fixed time would consent in writing that the verdict be increased to $150. Upon appeal by the defendant, the Court held that the order was entirely right.

"But * * * the Court * * * may require a defendant to consent to an increase in the amount of the judgment to the amount indisputably due, on pain of granting plaintiff's motion for a new trial." 38 Cyc., 1899.

In *Smith v. Ellyson,* 137 Iowa, 391; 115 N. W., 40, it is held that, upon plaintiff's motion for a new trial, it could be granted upon condition that the defendant refused to make a certain modification of the verdict. In *Reuter v. Hickman,* 160 Wis., 284; 151 N. W., 795 Ann. Cas., 1916B, 455, it is held that in granting a new trial for inadequacy of damages, whether the defendant should be given the option to allow judgment for a larger sum was within the discretion of the Trial Court.

In *Gaffney v. Illingsworth,* 90 N. J. Law, 490; 101 A., 243, the Court said:

"The power of the Court in granting a new trial upon the ground that the damages are excessive, upon terms that a new trial shall be had unless the plaintiff will accept a certain sum named, less than that awarded by a verdict, is too well established to be questioned. It would seem to follow, by parity of reasoning that, when a new trial is granted because the damages are inadequate, the Court may impose like terms; that is, terms to the effect that, if the defeated party will pay a certain sum greater than that awarded by the verdict, the rule will be discharged."

"Where the objection that the recovery is inadequate is not raised in a motion for a new trial, it is waived and cannot be urged on appeal, and this is true although an exception is taken to the instructions on the measure of damages. Thus a judgment will not be reversed for failure to allow interest, where the omission was not made a special ground for new trial, and where through mere oversight a judgment rendered is for a less sum than the successful party is entitled to, an objection on that ground must be embodied in the motion for new trial or it will be waived." 29 Cyc., 751.

In *Marsh v. Minneapolis Brewing Co.,* 92 Minn., 182; 99 N. W., 630, the Court held that on a motion for a new trial the trial Court had the right to grant the order *nisi,* requiring the defendant to consent to an increase of the verdict in a damage suit from $50 to $175 or to submit to a new trial.

In *Schein v. Epstin,* 110 S. C., 433; 96 S. E., 905, the Court said:

"The action was an action at law, and the Judge had no right to give a judgment contrary to the finding of the jury. The decree practically sets aside the verdict of the jury, and that much his Honor had the right to do. Having set aside the verdict, a new trial followed, as a matter of course, as the only thing that could have been done."

In *Gwathmey v. Hotel Co.,* 121 S. C., 237; 113 S. E., 688, upon the defendant's motion for a new trial, the circuit Judge passed an order directing that the verdict for punitive damages be reduced to $500 and refusing the motion. The Court held that this was error, in that the plaintiff was not allowed the option of remitting that amount or of submitting to a new trial. It is there said:

"The authority of a circuit Judge to correct, modify, or interfere with the verdict of a jury in a case properly triable by a jury is embraced in and limited to the power to grant new trials."

The plaintiffs, dissatisfied with the disallowance of interest, had the right: (1) To move the presiding Judge during the term for a modification of the order upon the ground of his error in disallowing interest; this they did not do. (2) To move the presiding Judge for a new trial or a new trial *nisi,* during the term, and to appeal from his refusal to this Court; this they did not do.

They have not even entered up judgment upon the order of Judge Mauldin; they expect this Court to do what Judge Mauldin upon a motion for a new trial could not have done, arbitrarily increase the verdict without giving the defendant the option of increasing it or submitting to a new trial.

If they had entered up judgment upon the order and appealed from the judgment upon the ground of error in the matter of interest, this Court under the circumstances might have considered the appeal as from an order refusing a motion for a new trial, as was done in the *Wilson Case,* 123 S. C., 399; 115 S. E., 764, but even then the most that this Court could have done would have been to have passed an order for a new trial *nisi,* giving the defendant the option of consenting to the increase or submitting to a new trial.

Let the master's report and the order of Judge Mauldin be incorporated in the report of the case.

The judgment of this Court is that the appeals of both parties be dismissed, and that the case be remanded to the

Circuit Court for entry of judgment in accordance with the order of Judge Mauldin.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS and MARION concur.