## 10514

### CARTER v. S. A. L. RY. CO.

#### (104 S. E. 186.)

1. TRIAL—EVIDENCE PROPER IN CHIEF MAY BE OFFERED IN REPLY.—All the competent and relevant testimony in a cause ought to be presented to the jury, and the order of its presentation is often a secondary matter, so justice is done, and evidence which should be offered by plaintiff in chief may be introduced in reply, where the defendant is not prejudiced.

2. APPEAL AND ERROR—REMARKS OF JUDGE AS TO INDEFINITE ANSWERS OF WITNESS NOT PREJUDICIAL.—Remarks of a Judge concerning a witness, "I am getting impatient because he won't say anything definite," and, "You have been a half hour trying to get an explanation and haven't gotten it yet," and "that your explanation does not explain," although improper, did not warrant a reversal.

3. Railroads—Duty to Give Signals at a "Traveled Place."—A "traveled place," within Civ. Code 1912, sec. 3222, requiring railroads to give certain signals, means a place traveled by legal right; but, independent of the statute, if a train is operated backward on a dark night, at a place accustomed to be used for a walkway, with the knowledge of the operators, then they must use due care to prevent injuries.

4. Railroads—Instruction on Lookout and Notice at Place Used for Travel Held Proper.—Instructions, to the effect that a pedestrian on a track used by the public for travel to such extent as to constitute notice of his presence had the rights of a licensee entitled to lookout and notice by operators of a train backing along the track on a dark night, regardless of the statute requiring signals, if the point was a traveled place *held* proper, and not objectionable on the ground that the term "traveled place" was misleading, and that jury were given to understand that as soon as a railroad gains knowledge that persons were trespassing such persons became licensees.

5. Railroads—Instruction on Lookout Held Relevant to Testimony.—An instruction, requiring operators of a work train backing on a dark night to keep a proper lookout for pedestrians at a point used for a walkway, *held* relevant to the testimony showing movement of train without headlight on the caboose in which the trainmen charged with that duty were riding.

6. Death—$10,000 Not Excessive for Death of a Man 62 Years of Age.—A verdict for $10,000 for the death of a man 62 years of age was not so manifestly excessive that Court may set it aside.

7. Death—$15,000 Punitive Damages Properly Allowed Against Railroad.—An action for the death of a man 62 years of age, killed by a train backing in the dark without a headlight on the caboose, *held* one justifying punitive damages for $15,000.

Before Prince, J., Charleston, Fall term, 1919. Affirmed.

Action by Jane Carter, as administratrix of Chas. L. Carter, deceased, against Seaboard Air Line Railway Co. From verdict for plaintiff, the defendant appeals.

· *Messrs. Buist & Buist,* and *Smythe & Visanska,* for appellant, cite: *Duty of railroad as to person on track who*

Note.—On excessiveness of verdicts in actions ·for personal injuries resulting in death, see note in L. R. A. 1916c, 820.

On· violation of rule as to giving of signals as evidence of negligence toward public, see notes in 8 L. R. A. (N. S.) 1063; L. R. A. 1917c, 801.

*is seen to be helpless:* 93 S. C. 17; 93 S. C. 49; 70 S. C. 183: *Traveled place is one in which public has acquired a right, but not one habitually traveled by trespassers:* 34 S. C. 299; 41 S. C. 20; 34 S. C. 450; 47 S. C. 375; 59 S. C. 429; 63 S. C. 494; 97 S. C. 423. *Use must be so continuous and notorious that failure to object raised a presumption of assent:* 67 S. C. 499; 33 Cyc. 754. *Crew of train is justified in assuming that persons on right of way will take reasonable precautions to prevent injury:* 57 S. C. 243; *Company owes no duty to trespasser except not to harm him wilfully or wantonly:* 67 S. C. 499. *It is not the duty of counsel to call attention of Judge to fact that requests have not been charged:* 59 S. C. 307; 111 S. C. 322.

*Messrs. Logan & Grace,* for respondent, cite: *Time for introduction of testimony in discretion of Judge:* 92 S. C. 191; 104 S. C. 119; 89 S. C. 98; 110 S. C. 364. *Comments of Judge did not bring them within principle of* 81 S. C. 379; 99 S. C. 221; *but more like* 71 S. C. 143; 87 S. C. 412. *Excessive verdict must rest on responsibility of Circuit Judge:* 103 S. C. 118; 97 S. C. 267. *Where there has been no motion for nonsuit or directed verdict as to punitive damages, it cannot be corrected on appeal:* 93 S. C. 551; 101 S. C. 349. *Charge not erroneous when considered as a whole:* 61 S. C. 560; 70 S. C. 192. *If crossing is dangerous, railroad should have it flagged, even in absence of statute or ordinance:* 106 S. C. 131. *Rights of railroad in street not exclusive:* 33 Cyc. 206.

October 12, 1920.

· The opinion of the Court was delivered by MR. JUSTICE GAGE.

The plaintiff had a verdict against the defendant for $10,000 actual and $15,000 for punitive damages, for the killing of her husband, a man 62 years of age.

The event took place near the intersection of Cooper and Bay streets in the suburbs of Charleston, about nightfall; and, while a "work extra," made up of caboose, tank car, and engine, with engine to the north, was backing into the yards with the caboose at the tail end and no headlight upon it. The train backed against or ran over Carter, and killed him. No person who testified witnessed the impact; the theory of the plaintiff is that Carter was walking, by the consent of the defendant, along Bay street upon or near to the railroad track; the theory of the defendant is that Carter was lying in a fit on the track. The appellant has characterized these theories as the main issues (of fact) in the case. The brief puts the defendant's case thus:

"Therefore it would seem that this heavy recovery against the defendant has been based on one or both of two disputed issues of fact: First, that Carter was walking along, and not lying down on, the track when the train struck him, and as a corollary that the lookouts were inattentive to duty; and secondly, that the lights on the rear of the train were not lit. The greater part of our argument will be devoted to showing that the defendant did not obtain proper consideration by the jury on those two points, by reason of errors of law on the part of his Honor, the trial Judge."

The issues of fact thus stated are settled by the verdict; our only concern is to examine the alleged errors of law by the Court which guided the jury to a verdict. The 13 exceptions have been wisely condensed by the printed brief into eight "points;" and we shall consider those in the order of the brief.

A witness, Martin, after the defense had closed, and in reply, was called, and testified that he examined the knuckle of the caboose and found blood upon it. The Court ruled that so much was part of the plaintiff's case in chief, and ought to have been presented in chief. The testimony was, however, admitted, but the right reserved to the defendant to put up witnesses to show the

contrary.   The Court was plainly within the rules of right
procedure.   All the competent and relevant testimony in a
cause ought to be presented to the jury, and the order of its
presentation is often a secondary matter, so justice is done.
The appellant, though, says the event gave him no chance to
get the knuckle, and no chance to call the witness, Brinker,
and "no chance to do anything."   But the record does not
show that the defendant's counsel requested the Court for
further time to do something; the testimony was only
objected to because not in reply.   One witness denied that
there was blood on the knuckle.

   When the brakeman, Butler, was on the stand, and under
cross-examination, the Court remarked, "I am getting impa-
tient because he won't say anything definite, and, further,
"you have been a half hour trying to get an explana-
tion and haven't gotten it yet," and, further, "that
your explanation does not explain."   So much is
challenged under point 2 as in violation of that portion of
the Constitution which forbids a Court to charge on the
facts.   The remarks had been better not uttered, but they
do not warrant a reversal of the judgment.   The Court
charged the jury, "If the railroad had not previously
objected to the travel, with knowledge of it, the law applies
the doctrine of licensee," and, further, "If the place was
sufficiently traveled to put the railroad on notice that people
should be expected to be met on the railroad track at that
point, then he was a licensee;" and, further, "The railroad
was under no obligation to blow the whistle or ring the bell,
for that law applies only where a person is injured at a
crossing, but that by no means exempts the railroad from
giving some notice of its approach, if that was a traveled
way or had been used as a street;" and, further, the Court
refused to charge the jury that the locus was not a traveled
place; and, further, that the Court refused to charge these
postulates: "The only way by which the deceased could
acquire the right to go on the railroad's property would be

an invitation of the railroad, or by showing that the public had used the track or embankment as a walkway for over 10 years." "The public cannot acquire by prescription the right to use the right of way of a railroad company in a manner inconsistent with the company's right to use it for the purpose for which it was acquired; that, no matter how much the public may walk over or along a right of way of a railroad company, they cannot, by the mere continued fact of such walking, get any right which will prevent the reasonable and customary operations of trains along such right of way by the railroad company." "I further charge you that in order for the public to acquire any right to use the right of way of the railroad company as a walkway, which right depends solely on the use by the public of such right of way, it will be necessary that such use should have continued for a period of 10 years, and if the jury should find from the testimony that the public has not used the right of way of the defendant railroad company for a period of 10 or more years, then they can have no right to walk on such right of way dependent on such use, and their only right to walk on the right of way would depend upon other and independent rights."

3, 4 To all this the defendant has excepted, and has argued under point 3. The brunt of that point is directed to a discussion of the law of a "traveled place."

These words are found in the statute which imposes on railroad trains the duty to give certain signals "where the railroad crosses any public highway or street or traveled place." Section 3222, Code of Laws. The statute has been repeatedly construed, and there is now no doubt but that by the decisions "traveled place" means a place traveled by legal right. But, independent of that statute, if a railroad train shall be operated backward along its track on a dark night, and at a place accustomed to be used by the people for a walkway, with the knowledge of the operators, then the operators must use due care to prevent injuries to the

people. *Jones v. Railroad,* 61 S. C. 562, 39 S. E. 758. The Court so charged the law to the jury, plainly and with sufficient fullness, and there is no ground to say that—

"The jury were given to understand that, as soon as a railroad gains knowledge that persons were trespassing on its property, such persons ceased to be trespassers, and rose to the status of licensee."

The Court charged:

"So the question is, had there been such travel at that point, the point where the man was struck, as in the opinion of the jury had put the railroad on notice that it should reasonably expect to find some one upon the track—that is spoken of as the rights of a licensee—I charge you that it was the duty of the railroad company to keep a watchout, but the degree of indefatigability of the watch would depend on the possibility of meeting people upon its track. The railroad is not charged with keeping that degree of watchout in the country that they are charged with in the city, or in a thickly populated community, or at a point where the public are accustomed to meet and travel with the knowledge of the railroad company."

And again:

"Mr. Smythe, for defendant: I ask your Honor to charge that the mere fact that people are in the habit of walking along a railroad track, even though they may have done so for 20 years, does not of itself make that a traveled place.

"The Court: I have no hesitation in charging that; but, if they walked along the track without objection from the railroad company for any length of time that would warrant the conclusion that the railroad would reasonably expect to meet people there, it was their duty to keep a proper lookout. I have told them that the matter of ringing the bell had no application in this case, but that did not relieve them from the duty of giving some notice if this was a traveled place."

The charge was relevant to the testimony; so much showed that the train was moving backward at night, without headlight, 10 or 15 miles an hour, along or close by Bay street (yet chiefly a marsh), and so near its intersection with Cooper street, which is an occupied street, that the engine was stopped on Cooper street; that the conductor, the brakeman, and the flagman were all in the caboose, and the brakeman testified he "was looking out for people on the track," as the plaintiff contends was his duty under the circumstances; the conductor testified, "Before getting to Cooper street the crew in the caboose have to keep a lookout," as the plaintiff contends was their duty under the circumstances; the engineer testified that he had just before the accident "made a light application of the brakes, to allow the flagman to walk in front of the train—we put the flagman out as' we enter Bay street,"—but the flagman remained in the caboose.

The fourth point discussed the duty of the crew to give notice to the public of a moving train. As before quoted, the Court told the jury that the ringing of the bell had no application in the instant case, but that the circumstances recited did not relieve the operators from giving some sort of notice to the public of the train's movements. It is true the Court added, "If this was a traveled place," but we apprehend a jury is less apt to be confounded by these plain words than judges and lawyers have been, for a jury would not attach a technical meaning to them.

The fifth point raises an interesting question, to wit, the value in money of the life of a man of 62 years. It is not the first time that wise men have differed on that subject. Montaigne expressed the opinion that 40 years "is the just measure of life, and we ought not to expect to go much further." Sir William Osler thought a man's usefulness was done at 60, though his biographers declare now that he did not say so. Cicero, in a letter to

Athens, and quoting a dialogue betwixt Cato and Scipio, reports what Cato said about virtuous old age. That worthy considered its advantages inestimable "if we consider it as delivering us from the tyranny of lust and ambition, from the angry and contentious passions, from every inordinate and irrational desire." Under the circumstances, therefore, $10,000 is not so manifestly excessive that a Court may set it aside.

As to the punitive damages, a Circuit Judge of large experience and rare judgment expressed the opinion that "the case was one eminently proper for awarding punitive damages." We are of like opinion.

Points 6 and 7 are irrelevant to the testimony; and point 8 was, with fine grace, not stressed by the appellant's counsel.

The judgment is affirmed.