16608

GIBBS v. ATLANTIC COAST LINE R. CO., *ET AL.*

(70 S. E. (2d) 238)

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Appellants,* cite:

*Messrs. A. R. McGowan* and *G. M. Howe, Jr.,* of Charleston, *for Respondent,* cite:

March 28, 1952.

OXNER, Justice.

This action was brought by Samuel Gibbs against the Atlantic Coast Line Railroad Company and D. T. Smith, the conductor in charge of the train, to recover actual and punitive damages sustained by Gibbs when he was struck by a boxcar at the end of a train being pushed along certain tracks in Charleston County known as the Ashley River Extension. The trial resulted in a verdict in favor of Gibbs for $5,000.00 actual damages against the Railroad Company and Smith, and $2,500.00 punitive damages against the Railroad Company alone. The Court below set aside that portion of the verdict relating to punitive damages but refused a

motion for a new trial as to actual damages. From the judgment entered thereon, the Railroad Company and Smith have appealed. The principal questions for determination, timely raised by motions for nonsuit and directed verdict, are whether there was any evidence of actionable negligence on the part of appellants and, if so, whether respondent was guilty of contributory negligence or recklessness as a matter of law. Appellants also raise the further question that the Court erred in not setting aside the entire verdict upon the ground that it was inherently vicious.

We shall first determine whether the evidence was sufficient to warrant submission of the case to the jury.

The Ashley River Extension tracks of the Atlantic Coast Line Railroad Company run approximately north and south. Adjacent thereto on the east are the tracks of the Southern Railroad. Thirty or forty feet farther east and paralleling the railroad tracks above mentioned is a paved highway known as King Street Extension. There is a heavily traveled path running from said highway, in a westerly direction, across the railroad tracks to a Negro section known as Silver Hill. The evidence shows that this path has been used by the public, particularly those going to Silver Hill, for a period of more than twenty years. There are about thirty-five or forty homes in this settlement. Several of the houses and a church located therein are close to the tracks of the Atlantic Coast Line Railroad.

On April 23, 1948, about 8:00 p. m., respondent, a deaf and dumb Negro about 55 years of age, was struck by the forward car of a train, consisting of an engine and six cars, which was being pushed in a southerly direction. His left leg was badly mangled and had to be amputated below the knee. There is an irreconcilable conflict in the evidence as to the circumstances leading up to the accident. That offered by respondent, which included two eye-witnesses, may be briefly summarized as follows:

On the night in question respondent, carrying a suitcase, was proceeding to the residence of his sister, where he made his home. In doing so, he walked from King Street Extension along the path heretofore mentioned, crossed the track of the Southern Railroad and as he approached the track of the Coast Line, he observed an unlighted boxcar standing about two feet north of the path. As he proceeded to cross the Coast Line track along this path, the boxcar was suddenly backed without warning and struck him. One witness testified that the train had been standing four or five minutes before respondent reached the track. It is conceded that it was a dark night and that there were no street lights. Both eyewitnesses testified that there were no lights or markers of any kind at the rear of the train, which was suddenly backed without warning of any kind. These witnesses said that no member of the train crew was on the forward car and that none was seen until shortly after the accident. (It may not be amiss to further state that respondent offered testimony to the effect that the bell was not rung nor the whistle blown before the train was started, but this could have had no causal connection with the accident since respondent was deaf.).

The testimony of the train crew presents an entirely different situation. They deny that the train stopped at or near the path heretofore mentioned and assert that there was no occasion to stop at this point. They stated that the train stopped to put off a car at the Ashepoo Crossing, about half a mile north of where the accident occurred, and that the next switching to be done was at the plant of the Ford's Redi-Mix Concrete Company, a considerable distance south of the scene of the accident. The principal witnesses for the railroad company were the appellant conductor and a switchman whose testimony was substantially as follows: They were standing on ladders at the end of the forward car, each with a lighted lantern in his hand, which was clearly visible. As the train was proceeding south, with the bell ringing, at a speed of five or six miles an hour, they observed a man

(who later proved to be respondent) with a suitcase in his right hand, walking in a northerly direction between the tracks of the Coast Line and Southern Railway. When they first saw him, he was about twenty feet away but when the forward car had reached a point about ten feet from respondent, he suddenly turned directly west and started across the track. The conductor then hollered and the switchman immediately signalled the engineer to stop, but before this could be done respondent collided with the west side of the forward car. These two witnesses said respondent was not walking along the path and was found after the accident lying ten or fifteen feet south of this point. (All of respondent's testimony, including an officer who came up immediately after the accident, was to the effect that respondent was lying in or near the path). The testimony of the train crew was further to the effect that if the train had been standing where respondent's witnesses said it was, it would have been impossible to have thrown the switch which was located near where the path crossed the track.

We are not at liberty to pass upon the veracity of the witnesses and determine this case according to what we think is the weight of the evidence. In determining whether there was error in denying appellants' motions for a nonsuit and a directed verdict we must accept the version of the occurrence given by respondent's witnesses. Under their testimony he was not a trespasser. He was walking along a well defined path and it may be reasonably inferred from the evidence that it was used by the public in crossing the railroad tracks with the knowledge and acquiescence of appellant Railroad Company. Under these circumstances, it was the duty of the Company to observe ordinary care to avoid injuring anyone walking along this path. *Jones v. C. & W. C. Railway Co.*, 61 S. C. 556, 39 S. E. 758; *Sanders v. Southern Railway Co.*, 90 S. C. 331, 73 S. E. 356; *Carter v. Seaboard Air Line Railroad Co.*, 114 S. C. 517, 104 S. E. 186; *Smith v. Southern Railway Co.*, 207 S. C. 179, 35 S. E. (2d) 225; *Jones v.*

*Atlanta-Charlotte Air Line Railway Co.,* 218 S. C. 537, 63 S. E. (2d) 476.

Viewing the testimony in the light most favorable to respondent, we have this situation: A train, consisting of six cars, was standing on the tracks with the forward car about two feet north of the path respondent was using. There were no lights or markers at the end of the train. As respondent proceeded to cross the tracks, this train was suddenly pushed back without signals or warning of any kind. Certainly this warranted an inference of negligence. Even as to a moving train, it was held in *Smith v. Southern Railway Co., supra,* 207 S. C. 179, 35 S. E. 228, that the jury could infer negligence where there was evidence tending to show that cars were being backed on a dark night without lights being displayed on the forward car, and without signals or warnings of any kind being given. It was there further stated: "The duty of a railroad company to warn travelers of the approach of a backing train at night has been extended under certain circumstances to places other than regular railroad crossings."

We think it is equally clear that it cannot be said that respondent was guilty of negligence as a matter of law in undertaking to cross the railroad tracks along this path. This question was properly submitted to the jury.

The remaining exceptions relate to the verdict. As heretofore stated, the jury rendered a verdict against the conductor and the railroad company for actual damages in the sum of $5,000.00 and against the railroad company alone for punitive damages in the sum of $2,500-.00. The trial Judge properly held that a verdict for punitive damages against the Railroad Company alone could not stand and accordingly set aside this portion of the verdict, but left undisturbed the verdict for actual damages against both defendants. It is claimed that the fact that the jury found no punitive damages against the individual defendant evidenced a complete disregard of the instructions given by

the trial Judge and showed prejudice on the part of the jury. Under these circumstances, it is argued that the verdict "itself is inherently vicious," which should have been set aside entirely. We find no basis for the claim that the verdict is inherently vicious. The practice followed by the trial Judge is fully sustained by our decisions. *Massey v. Hines,* 117 S. C. 1, 108 S. E. 181; *Laird v. A. C. L. Railway,* 136 S. C. 34, 134 S. E. 220; *Currie v. Davis,* 130 S. C. 408, 126 S. E. 119. Also see 3 Am. Jur., Appeal and Error, § 1176; Annotation 135 A. L. R., page 1192.

All exceptions are overruled and the judgment below affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.