22148

John Earl GRAHAM, as Executor of the Estate of Vernetta Graham,[1] Respondent, v. Thomas A.WHITAKER, M.D., Appellant.

(321 S. E. (2d) 40)

Supreme Court

---

[1] Mrs. Graham was the plaintiff in the trial court but died during the pendency of this appeal.

*John B. McCutcheon, of McCutcheon, McCutcheon & Baker*, Conway, and *Howell V. Bellamy, Jr., of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers*, Myrtle Beach, *for appellant.*

*George Hearn, of Stevens, Stevens, Thomas, Hearn & Hearn, P.A.*, Loris, *for respondent.*

Heard May 7, 1984.

Decided July 31, 1984.

SHAW, Acting Justice:

This is an appeal by Thomas A. Whitaker, M.D., from a jury verdict of $10,000 actual damages and $10,000 punitive damages. Following the verdict, the trial judge granted a motion by respondent's attorney and ordered a new trial *nisi* on damages unless the appellant agreed to an *additur* of $67,500 in actual damages. We affirm.

In an action at law, on appeal of a case tried by a jury, the jurisdiction of this Court extends merely to the corrections of errors of law. A factual finding of the jury will not be disturbed unless a review of the record discloses no evidence which reasonably supports the jury's findings. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

On November 12, 1979, Mrs. Graham, age seventy-seven, went to Dr. Whitaker, an ophthalmologist, to be examined for glaucoma. There were conflicting versions of what occurred that day in Dr. Whitaker's office. Mrs. Graham claims she was called into one of the doctor's examining rooms where he put some "drops" in her eyes. She was given no warning of possible side effects from these drops. Dr. Whitaker placed her in the care of one of his assistants, none of whom had any medical training prior to working for him. Mrs. Graham was seated in a chair when her eyesight became so blurred as to cause her vision to completely disappear. When her name was called she stood up and fell. She struggled to get up, fell twice more, and blacked out. The next thing she remembers is being carried out of the examining room.

Dr. Whitaker's version of the incident differs. He claims Mrs. Graham was initially examined by one of the doctor's assistants, Michelle Willis. Then Dr. Whitaker performed his

initial examination. Afterwards, Mrs. Graham was returned to the care of Mrs. Willis who never had any formal ophthalmological or medical training. Mrs. Willis put drops of mydriacyl in Mrs. Graham's eyes to dilate them and then prepared the dilation test. She called Mrs. Graham's name. Mrs. Graham attempted to stand but fell because her foot was wrapped around a leg of the chair. However, Mrs. Graham completed the eye examination.

The instructions which accompanied the mydriacyl warned of blurred vision and possible dizziness. Expert testimony revealed that mydriacyl would blur "near" vision but not "distance" vision and this effect was greater in young people than in older ones. The experts also testified mydriacyl should not hinder walking and only rarely would more serious side effects occur.

When the examination was complete, two of the doctor's assistants helped Mrs. Graham to the waiting room. She was complaining of stiffness in her leg and was limping slightly. Her husband took her to a hospital where x-rays revealed a fractured hip. Within a few days, an operation was performed and a pin inserted into the fractured hip. The pin eroded the bone which became infected. A second operation became necessary. This time a plastic hip was inserted. Due to these two operations, Mrs. Graham spent about 101 days in the hospital. She was changed from a very active and happy woman to a depressed cripple who could move about only with the aid of a walker.

Dr. Whitaker initially claims Mrs. Graham is estopped from bringing this lawsuit because of a jury verdict against her husband in an earlier case against Dr. Whitaker in which he attempted to recover for loss of consortium and the medical bills he paid on his wife's behalf. This contention is without merit. It is well settled in South Carolina that one spouse's cause of action for medical expenses and loss of consortium resulting from negligent injuries to the other spouse is a different and distinct cause of action from one maintained by the injured spouse; judgment in favor of the defendant in one action is not a bar to the other action. *Hiott v. Contracting Services*, 276 S. C. 632, 281 S. E. (2d) 224 (1981); *Priester v. Southern Ry. Co.*, 151 S. C. 433, 149 S. E. 266 (1929); *Ryder v. Jefferson Hotel Co.*, 121 S. C. 72, 113 S. E. 474 (1922).

Dr. Whitaker next contends the trial judge erred in denying his motions for a directed verdict and a J.N.O.V. or a new trial on the issues of liability, contributory negligence and punitive damages. Of course, in ruling on the denial of these motions, we must consider the evidence in a light most favorable to Mrs. Graham. We are not at liberty to pass upon the veracity of the witnesses and determine this case according to what we think is the weight of the evidence. *Gibbs v. Atlantic Coast Line R. Co.*, 221 S. C. 243, 70 S. E. (2d) 238 (1952).

At the close of her testimony, Mrs. Graham elected to proceed on the theory of a business invitee or premise liability. A person owes an invitee the duty of exercising reasonable or ordinary care for his safety and is liable for any injury resulting from the breach of this duty. This degree of care must be commensurate with the particular circumstances involved, including the age and capacity of the invitee. This duty is an active or affirmative duty. It includes refraining from any act which may make the invitee's use of the premises dangerous or result in injury to him. It is unessential that the precise manner in which the injuries might have occurred, or where sustained, be foreseeable, or foreseen. It is sufficient that there is a reasonable generalized gamut of greater than ordinary dangers of injury and that the sustaining of the injury was within this range. It is, therefore, a jury question whether the defendant had provided reasonably safe premises. *Hughes v. Children's Clinic*, 269 S. C. 389, 237 S. E. (2d) 753 (1977).

Other questions for the jury are the issues of negligence, contributory negligence, and proximate cause, and, if more than one reasonable inference can be drawn from the evidence, the trial judge is required to submit these issues to the jury. *Kennedy v. Custom Ice Equipment Co.*, 271 S. C. 171, 246 S. E. (2d) 176 (1978). Similarly, if more than one reasonable inference can be drawn from the evidence as to whether the defendant's behavior was reckless, willful, or wanton, the issue of punitive damages must also be submitted to the jury. *Gilbert v. Duke Power Co.*, 255 S. C. 495, 179 S. E. (2d) 720 (1971); *Gibbs v. Atlantic Coast Line R. Co.*, 221 S. C. 243, 70 S. E. (2d) 238 (1952).

Dr. Whitaker argues the negligence of him or his employees, if any, was not the proximate cause of Mrs. Graham's injuries. However, more than one reason-

able inference can be drawn from the evidence, and we cannot say as a matter of law that the trial judge erred in submitting these issues to the jury.

First, none of Dr. Whitaker's "nurses" had any medical training prior to joining the doctor's staff. This lack of training included rudimentary first-aid knowledge as well as any knowledge in the field of ophthalmology. Any experience or knowledge they acquired was the result of on-the-job training. Second, one of the known side effects of mydriacyl is blurred vision. The extent of the blurring varies from individual to individual. Finally, Mrs. Graham was not warned of this known side effect as was the doctor's duty. *House v. European Health Spa,* 269 S. C. 644, 239 S. E. (2d) 653 (1977). She was left in the care of an untrained person and was essentially unattended at the time of the accident. Viewing the evidence most favorably to Mrs. Graham, we cannot say there is no evidence of negligence in the record. *Townes Associates, supra.*

While it appears that Mrs. Graham was able to walk ██ ██ out of the doctor's office and that most of her injuries were sustained as the result of her first operation, this intervening act will not break the chain of causation so as to excuse the negligence of Dr. Whitaker or his employees. Liability exists for the natural and probable consequences of negligent acts and omissions, proximately flowing therefrom. The intervening negligence of a third person will not excuse the original wrongdoer if such intervention ought to have been foreseen in the exercise of due care. *Matthews v. Porter,* 239 S. C. 620, 124 S. E. (2d) 321 (1962). It has been held in South Carolina that the negligence of an attending physician is reasonably foreseeable. The general rule is that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the physician as part of the immediate and direct damages which naturally flow from the original injury. *Bessinger v. DeLoach,* 230 S. C. 1, 94 S. E. (2d) 3 (1956). *See also* 100 A.L.R. (2d) 808. There was no error in submitting the issue of proximate cause to the jury.

If Mrs. Graham's own negligence contributed to her inju-

ries, then she would be barred from any recovery. Dr. Whitaker claims Mrs. Graham fell because her foot was wrapped around the leg of the chair; she denies this. Obviously, with such divergent versions of the occurrence of the incident, the issue of contributory negligence was a factual matter for the jury and not a question of law for the court. *Kimbrell v. Bi-Lo*, 248 S. C. 365, 150 S. E. (2d) 79 (1966).

With regard to punitive damages, the evidence was capable of more than one reasonable inference. The trial judge properly declined to rule that leaving an elderly woman with possibly blurred vision in the care of an unskilled medical assistant did not constitute reckless behavior. It was for the jury to determine whether or not Dr. Whitaker or his employees recklessly breached the active, affirmative duty to make his premises reasonably safe to all invitees. *Hughes v. Children's Clinic, supra; Parker v. Stevenson Oil Co.*, 245 S. C. 275, 140 S. E. (2d) 177 (1965).

Dr. Whitaker submits that the trial judge abused his discretion in granting a new trial *nisi* claiming the facts and circumstances of this case call for a new trial not only as to damages but as to liability as well. We disagree. Formerly, when a new trial was granted all issues were submitted again to the jury. More recently, this court has determined that a new trial on a particular issue only is appropriate in the interest of judicial economy. In the case of *Industrial Welding Supplies v. Atlas Vending Co.*, 276 S. C. 196, 277 S. E. (2d) 885 (1981), this court ruled that a new trial could be limited to a single issue. Here, we have held that there were no errors of law as relates to the trial of the liability issue. Accordingly, only the matter of ascertaining the amount of damages should be tried again. The issues are separate and distinct such that a fair trial has been conducted as to liability leaving only for the second trial the matter of damages. See *White v. Fowler*, 276 S. C. 370, 278 S. E. (2d) 777 (1981).

The last issue for determination is whether the trial judge abused his discretion in granting a new trial *nisi additur*.

Section 15-27-150 of the 1976 South Carolina Code of Laws provides:

> Circuit courts may grant new trials in cases in which there has been a trial by jury. Such new trials may be granted for reasons for which new trials have usually been granted in the courts of law of this state.

There can be no question but that the trial judge has the authority and traditionally has in this State granted new trials outright when he, sitting as the thirteenth juror charged with the duty of seeing that justice is done, is convinced that a new trial is necessitated on the basis of the facts in the case. There is given to the trial judge a broad discretion which has been used sparsely and rightly so.

In like fashion, it is well settled that judges have the authority to grant to a defendant a new trial *nisi remittitur*. In such cases, the judge may not impose a substitute for the jury verdict on an unwilling plaintiff. He may give to the defendant the right to a new trial unless the plaintiff agrees to remit a portion of the verdict. If the plaintiff chooses not to remit a new trial is essential.

The motion for a new trial *additur* has not been frequently used but it is true that the trial judge has the authority to grant a new trial to the plaintiff unless the defendant agrees to the payment of an additional amount. We need not plow new ground in holding that the authority to act in behalf of the plaintiff is equally appropriate. In *Middleton v. Atlantic Coast Line,* 133 S. C. 23, 130 S. E. 552 (1925), this court quoted a New Jersey case with approval as follows:

In *Gaffney v. Illingsworth,* 90 N.J. Law, 490, 101 A. 243, the court said:
The power of the court in granting a new trial upon the ground that the damages are excessive, upon terms that a new trial shall be had unless the plaintiff will accept a certain sum named, less than that awarded by a verdict, is too well established to be questioned. It would seem to follow, by parity of reasoning that, when a new trial is granted because the damages are inadequate, the court may impose like terms; that is, terms to the effect that, if the defeated party will pay a certain sum greater than that awarded by the verdict, the rule will be discharged.

In *Toole v. Toole,* 260 S. C. 235, 195 S. E. (2d) 389 (1973), this court said:

Motions for a new trial on the ground of either excessiveness or inadequacy are addressed to the sound discretion of the trial judge. His exercise of such discretion, however, is not absolute and it is the duty of this Court in

402

a proper case to review and determine whether there has been an abuse of discretion amounting to error of law.

We know of no just reason why relief from excessiveness or inadequacy should not be equally available to plaintiffs and defendants. In neither case may a judge impose his will upon a party. The option must be given. Certainly, he has no right to substitute his judgment for that of the jury. In actuality, the import of a new trial *nisi additur* or *nisi remittitur* is a suggestion on the part of the judge of a settlement figure. If the party ruled against agrees to the suggested amount he may not complain. The prevailing party having asked for the relief must likewise be content with the determination.

We find no abuse of discretion in the trial judges order. ■ The *additur* was properly accompanied with the option to Dr. Whitaker of a new trial on actual damages. The trial judge has stated appropriate reasons in his order. Certainly it cannot be seriously argued that plaintiff herein was adequately compensated or even nearly so, for the injuries she sustained.

The Defendant shall within ten days from notice of filing of our *remittitur* in which to agree to the additional amount of the verdict. Failing to agree to the additional amount, it becomes the duty of the Clerk of Court to place the case on the trial docket for disposition in keeping with the order of the trial judge.

Affirmed.

LITTLEJOHN, C. J., and NESS, GREGORY and HARWELL, JJ., concur.