283 S.C. 229 (1984)
321 S.E.2d 185
Francis Eugene HASKINS, Appellant-Respondent,
v.
FAIRFIELD ELECTRIC COOPERATIVE, Respondent-Appellant. Annie R. HASKINS, Appellant-Respondent,
v.
FAIRFIELD ELECTRIC COOPERATIVE, Respondent-Appellant.
0283
Court of Appeals of South Carolina.
Heard May 15, 1984.
Decided September 25, 1984.
*230 *231 Terry E. Richardson, Jr., of Blatt & Fales, Barnwell, and *232 John A. Martin, Winnsboro, for appellants-respondents.
Heyward E. McDonald, Columbia, for respondent-appellant.
Heard May 15, 1984.
Decided September 25, 1984.
SHAW, Judge:
This is an action for negligence resulting in personal injuries to the appellant-respondent, Eugene Haskins. He was severely burned at an electrical power substation owned by the respondent-appellant, Fairfield Electric Cooperative. We affirm in part, reverse in part, and remand the issue of Mrs. Haskins' damages for a new trial.
On January 23, 1978, Herbert Haynes, Bobby Brooks, George Yongue, and Haskins measured transformers at substations located in Wateree and Chester. The cooperative was taking bids for removal of transformers from various substations. Haynes desired to bid and needed to have the transformers' measurements in order to bid. Yongue was the employee of the cooperative who unlocked the gate around the substation and informed the work crew which transformers were "live" and which were "dead". Brooks operated the heavy machinery for Haynes in moving contracts. Haskins voluntarily helped because of his friendship with Haynes but wasn't paid for his work.
Prior to entering the Chester substation, Yongue explained which transformers were live and dead. The live transformers had wires connected while the dead ones didn't. Haskins entered the substation with a metal tape measurer. He knew Yongue had rubber gloves and an "extendo stick" (an extendable, insulated measuring device) in his car but did not ask to use the gloves nor the stick. Yongue offered neither. Yongue knew the applicable safety rules prevented working with a metal tape or without rubber gloves inside a substation, and allowed Haskins to enter with the metal tape and without rubber gloves. Yongue did not inform Haskins of a safety rule against coming within three feet of a live transformer with a metal tape measure.
As Haskins measured a dead transformer, Yongue told him to measure away from the side near a live transformer. Later, *233 Yongue walked to the back fence of the substation to check on some stakes. It was then Haskins extended the tape measure somewhere between three to six feet to point to the place where the dead transformer would be hooked with cables to be removed. Haskins was pointing with the tape measure when he turned to speak to Haynes. When he turned, the metal tape either touched the live transformer or came close enough for the electricity to "arc" onto it. Sixty-nine thousand (69,000) volts of electricity went from the tape, down Haskins' body, out of his left foot, onto a piece of nearby iron and back to the transformer.
Remarkably, Haskins lived, but suffered greatly. He spent over two months in the burn unit at the Medical University in Charleston undergoing extremely painful treatment. His wife spent almost two months living in the waiting room. Needless to say, she suffered much mental anguish. Haskins' recuperation was slow and painful. He can engage in very little physical labor except for walking, and he suffers from constant pain in his left foot.
The trial judge refused to allow Dr. Hughes, the doctor who treated Haskins at the Chester hospital, to describe an operation called a sympathectomy on the ground of not being qualified. Haskins might have to undergo this operation to relieve the permanent pain in his left foot as all other procedures performed to relieve this pain were only temporarily successful. However, through a deposition which became part of the record, Dr. Yarborough, a burn specialist, described this operation.
The cooperative's motion for a directed verdict on the grounds of lack of negligence, contributory negligence, lack of proximate cause, and assumption of risk was denied. The jury returned the following verdicts: "We find for the plaintiff, Eugene Haskins, Thirty Thousand and No/100 ($30,000) Dollars. We find that this plaintiff [Mrs. Haskins] is due no money". The cooperative's motion for a judgment N.O.V. was denied as were Mr. and Mrs. Haskins' motions for a new trial nisi additur or a new trial on the sole issue of damages.
In an action at law, on appeal of a case tried by a jury, the jurisdiction of this court extends merely to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses *234 no evidence which reasonably supports the jury's findings. Townes Associates, Ltd. v. City of Greenville, 266 S.C. 81, 221 S.E. (2d) 773 (1976).
In considering a defendant's motions for a directed verdict and a judgment N.O.V., the trial judge must view the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. These motions should be granted only when the evidence is susceptible of only one reasonable inference; these motions should not be granted if the evidence is susceptible of more than one reasonable inference. Gallmon v. American Employers' Insurance Co., 272 S.C. 369, 252 S.E. (2d) 124 (1979); Skipper v. Hartley, 242 S.C. 221, 130 S.E. (2d) 486 (1963). In ruling on the denial of these motions, this court must consider the evidence in a light most favorable to the Haskins. We are not at liberty to pass upon the veracity of the witnesses and determine this case according to what we think is the weight of the evidence. Gibbs v. Atlantic Coast Line R. Co., 221 S.C. 243, 70 S.E. (2d) 238 (1952).
The issues of negligence, contributory negligence and proximate cause are questions for the jury if more than one reasonable inference can be drawn from the evidence. Kennedy v. Custom Ice Equipment Co., 271 S.C. 171, 246 S.E. (2d) 176 (1978). Similarly, if more than one reasonable inference can be drawn from the evidence as to whether Haskins freely and voluntarily entered into some relationship with the cooperative which presented obvious danger, then the question of whether Haskins assumed the risk of electrocution is also for the jury. Turner v. Sinclair Refining Co., 254 S.C. 36, 173 S.E. (2d) 356 (1970).
We cannot say as a matter of law the trial judge erred in submitting these four issues to the jury. Yongue was clearly in charge of the work crew on the day of the accident. He was charged with supervising the measurement activities on behalf of the cooperative. Yet, he allowed Haskins to enter the substation with a metal tape instead of the extendo stick and without rubber gloves. He also failed to warn Haskins as to the safety rule against having metal tape measures within three feet of a live transformer. All of Yongue's actions and inactions were in violation of the safety rules established by the National Electrical Safety Code. *235 While this code has no legislative sanction, it is helpful in determining common law negligence in the electrical industry. Holmes v. Black River Electric Cooperatives, 274 S.C. 252, 262 S.E. (2d) 875 (1980); Foreman v. Atlantic Land Corp., 271 S.C. 130, 245 S.E. (2d) 609 (1978).
Haskins testified he knew which transformers were dead and live. Not only had Yongue pointed them out, but also the live transformers had wires connected to them; the dead ones did not. In addition, the live transformers made a humming noise whereas the dead ones were silent. Haskins had worked around electricity many years prior to retiring and was fully knowledgeable of basic electrical principles and of electricity's danger. Before the accident, the work crew had safely measured the transformers at the Wateree substation. Further, Haskins was at the Chester substation of his own free will. No employment relationship existed between him and the cooperative or between him and Haynes.
The pertinent facts in this case are nearly undisputed. When the facts tend to show both parties guilty of negligence and there may be a fair difference of opinion as to whose act or acts produced or contributed to the injury complained of as a direct and proximate cause, the questions of negligence, proximate cause, and contributory negligence should be submitted to the jury. Wilson v. Marshall, 260 S.C. 271, 195 S.E. (2d) 610 (1973); Kennedy v. Custom Ice Equipment Co., supra.
An electrical power company must exercise a high degree of care to prevent injury to persons rightfully in proximity to high voltage wires. The care required means more than mechanical skill and includes foresight with regard to reasonably probable consequences. Elliott v. Black River Elec. Co-Op., 233 S.C. 233, 104 S.E. (2d) 357 (1958). From the facts presented, fair minded men could have drawn different conclusions. The jury could have reasonably concluded the proximate cause of Mr. Haskins' injuries was the negligence of Yongue in allowing him to enter the substation with the metal tape instead of the extendo stick and without rubber gloves, in failing to warn him of the safety rules applicable to transformers and metal tapes, and in failing to supervise the entire measurement operation. The issues of negligence and proximate cause were properly presented to *236 the jury as were the issues of contributory negligence and assumption of risk.
Mr. and Mrs. Haskins complain of the trial judge's denial of their motions for a new trial nisi additur or a new trial on the sole issue of damages. A motion for a new trial may be granted in tort actions where the verdict is grossly inadequate; such motions are addressed to the sound discretion of the trial judge. Bodie v. Charleston & W.C. Ry. Co., 66 S.C. 302, 44 S.E. 943 (1903); Toole v. Toole, 260 S.C. 235, 195 S.E. (2d) 389 (1973); Daniel v. Hazel, 242 S.C. 443, 131 S.E. (2d) 260 (1963). The trial judge also has the power to grant a new trial nisi additur when he finds the verdict so grossly inadequate as to be the result of prejudice and passion or merely insufficient based on the evidence. Middleton & Co. v. A.C.L.R., 133 S.C. 23, 130 S.E. 552 (1925); Anderson v. Aetna Casualty & Surety Co., 175 S.C. 254, 178 S.E. 819 (1934), on rehearing (1935); Graham v. Whitaker, 321 S.E. (2d) 40 (S.C. 1984). However, compelling reasons must be stated in the order as to why it was necessary to invade the jury's province in this manner.
We see no abuse of discretion in the trial judge's denial of these motions as they concern Mr. Haskins. The amount of damages sustained in a personal injury action is a question for the jury. Hicks v. Herring, 246 S.C. 429, 144 S.E. (2d) 151 (1965); Haltiwanger v. Barr, 258 S.C. 27, 186 S.E. (2d) 819 (1972). We do not believe the $30,000 awarded is grossly inadequate so as to justify a new trial or additur or merely insufficient so as to only justify additur. The amount awarded completely covered Mr. Haskins' medical bills. He was retired at the time of the accident and will suffer no loss of income. While pain and suffering is a very material element of damages on which a recovery may be bottomed, these damages are unliquidated and indeterminate in character. They are not capable of exact measurement, and there is no fixed standard whereby damages for them can be determined. Hence, the amount of damages to be awarded for pain and suffering must be left to the judgment of the jury, subject only to correction by the courts for abuse. Harper v. Bolton, 239 S.C. 541, 124 S.E. (2d) 54 (1962); Edwards v. Lawton, 244 S.C. 276, 136 S.E. (2d) 708 (1964). There was no abuse.
*237 The verdict as it relates to Mrs. Haskins is a different matter. When a jury returns inconsistent verdicts, it is the duty of the trial judge to refuse to receive the verdicts and recommit the cases to the jury under additional instructions. If the trial judge fails to do this and the verdicts are irreconcilably inconsistent, an appellate court must order a new trial of both lawsuits. Rhodes v. Winn-Dixie of Greenville, 249 S.C. 526, 155 S.E. (2d) 308 (1967); Epps v. Freeman, 261 S.C. 375, 200 S.E. (2d) 235 (1973).
However, it is the duty of the court to sustain verdicts when a logical reason for reconciling them can be found. Rhodes v. Winn-Dixie of Greenville, supra. We do not believe these verdicts are inconsistent. In Mrs. Haskins' lawsuit, the jury did not find for the defendant, the cooperative, and against Mrs. Haskins; rather, the jury merely found she was due no money.[1] By not specifically finding against the cooperative, it is apparent the jury found for Mrs. Haskins on the issue of liability but awarded no damages.
It is well settled in this state the scope of a new trial may be limited to a single issue when the error requiring a new trial does not affect the determination of any other issue and a new trial can be limited solely to the issue of damages. Industrial Welding Supplies, Inc. v. Atlas Vending Co., 276 S.C. 196, 277 S.E. (2d) 885 (1981); White v. Fowler, 276 S.C. 370, 278 S.E. (2d) 777 (1981). We hold where a husband obtains a judgment for injuries, the wife recovers nothing, both lawsuits arise out of the same factual situation and the record supports the claim the wife had suffered damages, it is error for the trial judge to refuse to grant a new trial on the issue of the wife's damages. See Fejer v. Whitehall Laboratories, Inc., 182 So. (2d) 438 (Fla. App. 1966).
The record supports Mrs. Haskins' claim of injury. She testified of her fear that her husband would die and of the great pain he experienced throughout the burn *238 treatment which she watched. During the time Mr. Haskins was in the hospital, Mrs. Haskins slept in the waiting room and bathed in a public bathroom. When Mr. Haskins returned home, she had to learn how to bathe him and change his dressings. At night, she hears his involuntary groans of pain. The accident caused their lifestyle to change. During the whole ordeal, Mrs. Haskins' constant worry and mental anguish caused her to lose much weight. Based on this evidence, the award of zero actual damages is grossly inadequate under the facts of this case as to warrant the conclusion the jury was motivated by considerations not founded on the evidence and or the instructions of the court. The trial judge abused his discretion in not granting Mrs. Haskins a new trial on damages on the ground of inadequacy of the verdict. Morris v. Barrineau, 269 S.C. 84, 236 S.E. (2d) 409 (1977); Toole v. Toole, supra; Daniel v. Hazel, supra.
It is the Haskins' contention the trial judge erred in refusing to allow Mrs. Haskins to testify to the harassment she and her husband endured in the Charleston hospital from an agent of the cooperative's insurance company. Before the trial judge ruled as to whether this harassment was a proper element of damages; another witness was taken out of turn. When Mrs. Haskins' testimony resumed, this line of questioning was not pursued and the trial judge never ruled on the issue. Where a ruling on an objection is not made by the trial judge and counsel does not pursue a ruling, there is no decision by the trial judge for this court to review. Therefore, the exceptions relating to this issue are not subject to review. Adams v. Orr, 260 S.C. 92, 194 S.E. (2d) 232 (1973); Holston v. Jackson, 278 S.C. 137, 292 S.E. (2d) 794 (1982).
Finally, the Haskins claim the trial judge erred in refusing to allow Dr. Richard Hughes, a general practitioner, who treated Mr. Haskins at the Chester Hospital emergency room, to describe a sympathectomy, an operation Mr. Haskins may undergo to relieve the pain in his left foot. The objection to Dr. Hughes describing the operation was based on his not being qualified to do so. Dr. Yarborough, a burn specialist whose expertise is not questioned by Haskins, fully described a sympathectomy in deposition testimony which was read to the jury. The excluded testimony of Dr. Hughes was cumulative to Dr. Yarborough's testimony. *239 The exclusion of testimony is not prejudicial where another witness testified fully as to the matter excluded. Young v. Hudsex Motor Co., 172 S.C. 541, 174 S.E. 489 (1934); Pierce v. Marion County Lumber Co., 108 S.C. 387, 94 S.E. 865 (1918); Lowie v. Dixie Stores, 172 S.C. 468, 174 S.E. 394 (1934).
For the foregoing reasons, the decision is affirmed in part, reversed in part, and remanded for a new trial on the sole issue of Mrs. Haskins' damages.
BELL and CURETON, JJ., concur.
NOTES
[1] See Ramer v. Hughes, 131 S.C. 490, 127 S.E. 565 (1925), where the following verdicts were found to be inconsistent: (1) in the case of R.J. Ramer, "we find for the plaintiff $1,818.90 actual damages"; (2) in the case of J.E. Barton, "we find for the plaintiff $5,000 actual damages"; (3) in the case of R.J. Ramer and Mrs. Rosa E. Ramer, "we find for the defendants"; and (4) in the case of J.E. Barton and Mrs. Christine Barton, "we find for the defendant".