THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The Sovereign Group, Inc., Appellant,
v.
Surfmaster Owners Association, Inc., Respondent.
 
 
 

Appeal from Horry County
 J. C. Nicholson, Jr., Circuit Court Judge

Unpublished Opinion No. 2007-UP-084
Heard December 8, 2006  Filed February 15, 2007

AFFIRMED

 
 
 
Stephen G. Morrison and Paul T. Collins, both of Columbia, for Appellant.
Arthur E. Justice, Jr. and J. Jakob Kennedy, both of Florence; and R. Hawthorne Barrett, of Columbia; for Respondent.
 
 
 

PER CURIAM: In this action for negligence, breach of contract, and breach of fiduciary duty, the Sovereign Group, Inc., appeals the trial judges denial of its motion for a new trial on the facts or, in the alternative, a new trial nisi additur.  In addition, Sovereign appeals the trial judges denial of its motion to amend to add a cause of action for civil conspiracy.  We affirm. 
FACTS
Edith Ann Charping is the sole shareholder of Sovereign.  In 1986, Sovereign acquired title to Penthouse H in the Surfmaster B uilding, a condominium complex.  In 1989, Charping and her husband, William P. Charping, moved into Penthouse H.  William P. Charping is the president of an entity partnered with the developer of the Surfmaster Building.  
As early as 1987, certain units in the building began experiencing water leaks.  In 1993, the Surfmaster Owners Association, Inc. (the Association), hired a consultant to study the leaks.  The study revealed the leaks came from many places, including the patios above each unit.  As a result, the consulting firm recommended waterproofing each patio to prevent the leaks.  
The Association also hired water infiltration engineers to study the problem.  According to Dave Brannon, a board member for the Association from 1987 to the trial of this case, these engineers concluded waterproofing the patios would only temporarily solve the problem.  The engineers told the Association the external finish of the building was loose.  Because of this opinion, the Association filed suit against the buildings developer for defective design and construction.  
In 1996, the parties settled the lawsuit for an amount between two and four million dollars.  To begin fixing the leaks, the Association hired Marshall Clarke, an architect, to oversee and prioritize repairs.  In addition, because the settlement money was not enough to complete the repairs, the Association levied a special assessment of $425,000.  However, the Association never collected this assessment.[1]  During the ensuing years, the Association allowed individual owners to pay for repairs and seek refunds.  Clarke oversaw these repairs and approved of the expenditures.
In 1994, the Charpings vacated Penthouse H.  Both Charpings later testified they spent $110,000 to renovate Penthouse H and intended to use it as rental property.  After the renovation was completed in the summer of 1996, they discovered leaks from an adjoining stairwell.  More leaks came from the drainpipes running from the patio on Penthouse G, the penthouse immediately above Penthouse H.  
The Charpings both testified they could not rent out Penthouse H because of the extensive damage.  They also could not repair the leaks because the stairwell and patio were common or limited common areas that only the Association or the owner of Penthouse G could fix.  They informed the Association of the leaks in September 1996, but received no response.  
Because the Charpings could not prevail upon the Association to fix the leaks, they stopped paying their assessments, and soon thereafter, the Association filed a lien for unpaid assessments.  Approximately one year later, the Charpings visited Penthouse H and found the locks had been changed.  When they entered later that day, they discovered the ceiling had fallen, the carpet had been torn up, and certain fixtures had been removed.  
The Charpings attorney, Michael Montgomery, wrote the Association, informing it of the destruction and requesting a new key to Penthouse H.  The Association refused to provide a key and filed a foreclosure action against Sovereign.  
The water leaks and destruction inside Penthouse H worsened through 2002.  Clarke had given one of the contractors a key to use Penthouse H as a construction staging area.  In November 2002, the Charpings hired Charles Lindsey, a specialty contractor, to clean up the mess.  Lindsey charged $6,000.  
Sovereign answered the Associations foreclosure action and counterclaimed for negligence and breach of contract.  The case was referred to a master-in-equity, who severed the foreclosure action from the counterclaims before the case went to circuit court for trial.  
Before opening arguments, Sovereign made an oral motion to amend its answer and counterclaim to include causes of action for breach of fiduciary duty, outrage, and civil conspiracy.  The trial judge allowed the breach of fiduciary duty and outrage amendments, but denied the civil conspiracy amendment.  
At trial, Sovereigns expert in remodeling and construction work testified the cost to restore Penthouse H to its 1996 condition was $104,000.  Moreover, Thomas L. Watts, Jr., an appraiser, testified the lost rental value of Penthouse H from January 1997 to December 2004 was $692,000.  
The trial judge granted the Associations motion for a directed verdict on Sovereigns outrage claim and submitted three causes of action to the jury: negligence, breach of fiduciary duty, and breach of contract.  The trial judge instructed the jury on damages, without objection from Sovereign. In fact, trial counsel for Sovereign stated that the charge was perfectly clear on damages and that he was happy with it.  The jury returned a verdict for Sovereign on all three causes of action, awarding $104,000 on the negligence claim, $6,000 on the breach of fiduciary duty claim, and $126,000 on the breach of contract claim.  In a special interrogatory, the jury found Sovereign had not been comparatively negligent.  
Sovereign agreed it would need to elect its remedy, and the trial judge gave the parties ten days to make post-trial motions.  Sovereign moved for a new trial based on the facts or, in the alternative, for a new trial nisi additur.  Specifically, Sovereign argued the jury failed to award damages for lost rental value.  The trial judge denied the motions.  Sovereign elected to recover based on its breach of contract claim.  This appeal followed.
LAW/ANALYSIS
I. New Trial Motion
Sovereign argues the trial judge should have granted its motion for a new trial based on the thirteenth juror doctrine or, in the alternative, a new trial nisi additur.  Specifically, Sovereign maintains the trial judge should have granted these motions because the jury was confused about the proper method to allocate damages and the jury did not compensate Sovereign for the lost rental value of Penthouse H.  We disagree.
The thirteenth juror doctrine is a vehicle by which the circuit court may grant a new trial absolute when it finds the evidence does not justify the verdict.  Trivelas v. S.C. Dept of Transp., 357 S.C. 545, 553, 593 S.E.2d 504, 508 (Ct. App. 2004).  Under this doctrine, the
judge may grant a new trial if the verdict is inconsistent and reflects the jurys confusion.  Sorin Equip. Co., Inc. v. The Firm, Inc., 323 S.C. 359, 363-64, 474 S.E.2d 819, 822 (Ct. App. 1996).  
A trial judges order granting or denying a new trial upon the thirteenth juror doctrine will not be
disturbed unless the decision is wholly unsupported by the evidence, or the conclusion
reached was controlled by an error of law.  Vinson v. Hartley, 324 S.C. 389, 403, 477 S.E.2d 715, 722 (Ct. App. 1996). To reverse the denial of a new trial motion under this doctrine we must, in essence, conclude that the moving party was entitled to a directed verdict at trial.  Haselden v. Davis, 341 S.C. 486, 506, 534 S.E.2d 295, 306 (Ct. App. 2000); Parker v. Evening Post Pub. Co., 317 S.C. 236, 247, 452 S.E.2d 640, 646 (Ct. App. 1994).  
The trial judge also has the authority to grant a new trial nisi additur, which is vehicle by which the plaintiff is granted a new trial unless the defendant agrees to pay an additional amount.  Graham v. Whitaker, 282 S.C. 393, 401, 321 S.E.2d 40, 45 (1984).  On appeal, the trial judges decision regarding a motion for new trial nisi additur will not be disturbed absent an abuse of discretion amounting to an error of law.  Green v. Fritz, 356 S.C. 566, 570, 590 S.E.2d 39, 41 (Ct. App. 2003).  
Initially, we note that to the extent Sovereign attributes any jury confusion to the jury charge, this argument is not preserved for review.  Sovereign expressly approved the instruction and lodged no objection to it.  Because Sovereign failed to raise any issue regarding the jury instruction to the trial judge, the argument is not preserved for our review.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.).
Sovereign also argues the verdict itself shows the jury was confused regarding election of remedies.  Specifically, Sovereign points out that the $104,000 awarded for the negligence claim corresponds with the amount it would cost to restore Penthouse H to its 1996 condition, the $6,000 awarded for the breach of fiduciary duty claim corresponds to the cost of cleaning up the penthouse after it was used as a construction staging area, and the $126,000 awarded for the breach of contract was intended to reimburse Sovereign for its loss of use.  We disagree and find the verdict valid on its face.  
Differing damage awards for each cause of action does not create a necessary implication that the jury mistakenly split the total damages among the three claims; rather, the elements of each claim and the nature of duty breached controls the types of damages that could have resulted therefrom. See Steinke v. S.C. Dept. of Labor, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999)(stating plaintiff must show defendants breach of duty proximately caused plaintiffs injury in a negligence case); Fuller v. Eastern Fire & Cas. Ins. Co., 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962) (The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a proximate result of such breach.)(emphasis added);  Moore v. Moore, 360 S.C. 241, 253, 599 S.E.2d 467, 473 (Ct. App. 2004) (Damages in an action for breach of a fiduciary duty are those proximately resulting from the wrongful conduct of the defendant.)(emphasis added).
Furthermore, the amount awarded for breach of contract does not correspond with the $692,000 Sovereign claimed it was entitled to for its loss of use.  Rather than reflecting Sovereigns loss of use, the jurys award of $126,000 for breach of contract might include $104,000 to restore Penthouse H to its 1996 condition, along with the $6,000 to reimburse Sovereign for cleanup costs, and an additional $16,000 in loss of use. While $16,000 for loss of use is significantly less than what Sovereign anticipated, the jury was free to award this lower figure.  There is substantial evidence in the record that indicates the Sovereigns loss of use was nowhere near $692,000.  Norman Fortson, a member of the Associations board, testified the water damage to Penthouse H was only minor.  This testimony supports an inference that the leaks did not prevent Sovereign from using or renting Penthouse H.  Thus the jury may have found the only loss of use suffered by Sovereign occurred during the period when the Charpings were refused a key.  The jury might have reasonably determined this short-term loss of use amounted to only $16,000.
While the jury may have come to some other conclusion, we think the above-cited evidence reasonably supports the jurys verdict.  Accordingly, we hold the trial judge did not abuse his discretion in failing to grant Sovereigns motion for a new trial on the facts or a new trial nisi additur.
II. Motion to Amend
Sovereign argues the trial judge erred in refusing to amend its answer and counterclaims to include a cause of action for civil conspiracy.  We disagree.
Sovereign made its motion pursuant to Rule 15(a), SCRCP.  Rule 15(a) reads, in relevant part, [A] party may amend his pleading only by leave of court . . . ; and leave shall be given when justice so requires and does not prejudice any other party.  Therefore, a motion to amend is addressed to the trial judges discretion, and the party opposing the motion has the burden of establishing prejudice.  Collins Entmt, Inc. v. White, 363 S.C. 546, 562, 611 S.E.2d 262, 270 (Ct. App. 2005).  The prejudice envisioned by this rule is a lack of notice that the new issue is to be tried and a lack of opportunity to refute it. 
Stanley v. Kirkpatrick, 357 S.C. 169, 174, 592 S.E.2d 296, 298 (2004).
In this case, Sovereign moved to amend its answer and counterclaim on the first day of trial.  It alleged the record contained evidence supporting a civil conspiracy between the members of the Associations board, in their individual capacities, and Clarke.  A
civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff, thereby causing him special damages.  Angus v. Burroughs & Chapin Co., 368 S.C. 167, 170, 628 S.E.2d 261, 262 (2006).  
The trial judge clearly placed the burden of showing prejudice on the Association.  When the trial judge asked the Association why it would be prejudiced, its attorney explained he had not conducted any discovery on the issue and he would need time to locate and depose members of the Associations board during the alleged conspiracy.  We find the lack of opportunity to locate and depose possible defense witnesses, as well as the inability to call favorable witnesses to testify, would have prejudiced the Associations ability to defend itself.  Therefore, we hold the trial judge did not abuse his discretion in denying Sovereigns motion to amend.
CONCLUSION
We hold the trial judge did not abuse his discretion in denying Sovereigns motion for a new trial on the facts or, in the alternative, a new trial nisi additur.  Additionally, we find the trial judge did not abuse his discretion in refusing to allow Sovereign to amend its answer and counterclaim to allege a civil conspiracy.  Accordingly, the trial judges decision is hereby
AFFIRMED.
HEARN, C. J., and BEATTY and SHORT, JJ., concur.

[1] Brannon testified the Association determined it should wait before collecting the assessment because of the temporary nature of the waterproofing solution.